No. 23-11197

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

FEDERAL TRADE COMMISSION,
*Plaintiff-Appellee*,

v.

BURTON KATZ, et al.,
*Defendants-Appellants*.

On Appeal from the United States District Court
for the Southern District of Florida
1:19-cv-25046-RNS (Hon. Robert N. Scola, Jr.)

## SUPPLEMENTAL APPENDIX OF THE FEDERAL TRADE COMMISSION

### Volume I of VII (*Acquinity* Record)

ANISHA S. DASGUPTA
*General Counsel*

MARIEL GOETZ
*Acting Director of Litigation*

Of Counsel:
SARAH WALDROP
SANA CHAUDHRY
CHRISTOPHER ERICKSON
*Attorneys*

FEDERAL TRADE COMMISSION
Washington, D.C. 20580

BRADLEY DAX GROSSMAN
*Attorney*

FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue, N.W.
Washington, D.C. 20580
(202) 326-2994
bgrossman@ftc.gov

# TABLE OF CONTENTS

**Volume 1 – *FTC v. Acquinity Interactive*, No. 14-cv-60166 (S.D. Fla.)        Tab**

Amended Complaint....................................................................AQ-DE.88

Amended Preliminary Injunction ...........................................AQ-DE.177

Excerpt of Plaintiff's Exhibit 1...............................................AQ-DE.178-1

Excerpt of Plaintiff's Exhibit 33............................................AQ-DE.178-26

Excerpt of Plaintiff's Exhibit 45............................................AQ-DE.178-34

Excerpt of Deposition of Brent Levison...........................AQ-DE.178-46

Excerpt of Plaintiff's Exhibit 74............................................AQ-DE.178-67

Declaration of Melanie Damian............................................AQ-DE.200-24


**Volume 2 – *FTC v. On Point Global, LLC*, No. 19-cv-25046 (S.D. Fla.)**

Excerpt of Declaration of Brent Levison.................................OP-DE.78-2

On Point Consolidated Income Statement ...........................OP-DE.108-4

On Point Ecommerce Revenues............................................OP-DE.108-5

Excerpt of Declaration of Paola Zuluaga...............................OP-DE.127-2

Excerpt of Plaintiff's Exhibit 51............................................OP-DE.437-3

Declaration of Lashanda Freeman.........................................OP-DE.440-1

**Volume 3 –** *FTC v. On Point Global, LLC***, No. 19-cv-25046 (S.D. Fla.)**

Attachments to the Declaration of Lashanda Freeman…………….…OP-DE.440-1

Attachments to the Declaration of Lashanda Freeman (AA-AZ).........OP-DE.440-2

Attachment to the Declaration of Lashanda Freeman (BA)..................OP-DE.440-3

**Volume 4 –** *FTC v. On Point Global, LLC***, No. 19-cv-25046 (S.D. Fla.)**

Expert Report of Michele Mazurek........................................................OP-DE.440-5

Declaration of Thomas P. Van Wazer....................................................OP-DE.440-6

Declaration of Amanda Wilson..............................................................OP-DE.440-7

Declaration of Martin Elliott..................................................................OP-DE.440-9

Excerpt of Plaintiff's Exhibit 11............................................................OP-DE.440-13

Attachments to Plaintiff's Exhibit 11.....................................................OP-DE.440-14

Consumer Declarations and Attachments...........................................OP-DE.440-18

Excerpt of Plaintiff's Exhibit 25............................................................OP-DE.440-23

Attachments to Plaintiff's Exhibit 33.....................................................OP-DE.440-26

**Volume 5 –** *FTC v. On Point Global, LLC***, No. 19-cv-25046 (S.D. Fla.)**

Attachments to Plaintiff's Exhibit 35.....................................................OP-DE.440-30

Attachments to Plaintiff's Exhibit 49 (BA-BZ) .................................OP-DE.440-38

Attachments to Plaintiff's Exhibit 49 (CA-EZ) ..................................OP-DE.440-39

Attachments to Plaintiff's Exhibit 49 (FA-HZ) ..................................OP-DE.440-40

Attachment to Plaintiff's Exhibit 50 (H)..............................................OP-DE.440-41

Attachment to Plaintiff's Exhibit 50 (N-R) ........................................OP-DE.440-42

Excerpt of Deposition of Burton Katz.................................................OP-DE.440-44

Excerpt of Deposition of Brent Levison..............................................OP-DE.440-46

Excerpt of Plaintiff's Exhibit 37..........................................................OP-DE.440-47

Excerpt of Plaintiff's Exhibits 39-42...................................................OP-DE.440-48

Declaration of Elizabeth Miles............................................................OP-DE.440-56

Excerpt of Plaintiff's Exhibit 72 (A)....................................................OP-DE.440-64

## Volume 6 – *FTC v. On Point Global, LLC*, No. 19-cv-25046 (S.D. Fla.)

Excerpt of Plaintiff's Exhibit 72 (B)....................................................OP-DE.440-65

FTC's Statement of Undisputed Material Facts......................................OP-DE.455

Excerpt of Deposition of Brent Levison..............................................OP-DE.470-13

Excerpt of Defendant's Brief in Opposition to Summary Judgment........OP-DE.471

Defendant's Response to Statement of Undisputed Material Facts….......OP-DE.472

Order on Cross Motions for Summary Judgment.....................................OP-DE.528

## Volume 7 – *FTC v. On Point Global, LLC*, No. 19-cv-25046 (S.D. Fla.)

Verdict and Order....................................................................................OP-DE.579

Excerpt of Non-Jury Trial Transcript, Nov. 9, 2021…............................OP-DE.594

Defendant's Response to FTC's Opposition to Receiver's Motion.........OP-DE.602

Defendant's Response to Reconsider Claims Process............................OP-DE.624

Receiver's Final Status Report..............................................................OP-DE.662

Certificate of Service

# TAB
# AQ-DE.88

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

| | | |
|---|---|---|
| | ) | |
| FEDERAL TRADE COMMISSION, | ) | **Case No. 14-60166-CIV-** |
| | ) | **SCOLA/VALLE** |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ACQUINITY INTERACTIVE, LLC, a Florida | ) | |
| limited liability company, | ) | |
| | ) | |
| 7657030 CANADA, INC., a Canadian | ) | |
| corporation, also d/b/a ACQUINITY | ) | |
| INTERACTIVE, | ) | |
| | ) | |
| GARRY JONAS, individually and as an officer | ) | |
| of Acquinity Interactive, LLC and 7657030 | ) | |
| Canada, Inc., | ) | |
| | ) | |
| SCOTT MODIST, individually and as an officer | ) | |
| of Acquinity Interactive, LLC and 7657030 | ) | |
| Canada, Inc., | ) | |
| | ) | |
| JOSHUA GREENBERG, individually and as an | ) | |
| officer of Acquinity Interactive, LLC and 7657030 | ) | |
| Canada, Inc., | ) | |
| | ) | |
| GREGORY VAN HORN, individually and as an | ) | |
| officer of Acquinity Interactive, LLC, | ) | |
| | ) | |
| REVENUE PATH E-CONSULTING PRIVATE, | ) | |
| LIMITED, an Indian company, | ) | |
| | ) | |
| REVENUEPATH LIMITED, a Cyprus company, | ) | |
| | ) | |
| WORLDWIDE COMMERCE ASSOCIATES, | ) | |
| LLC, a Nevada limited liability company, also | ) | |
| d/b/a WCA, | ) | |
| | ) | |

1

**FTC App'x 0002**

SARITA SOMANI, individually and as an officer )
of Worldwide Commerce Associates, LLC, )
Revenue Path E-Consulting Private Limited, and )
Revenuepath Limited, )
)
FIREBRAND GROUP, S.L., LLC, a Nevada )
limited liability company, )
)
MATTHEW BEUCLER, individually and as an )
officer of Firebrand Group, S.L., LLC, )
)
BURTON KATZ, individually and also doing )
business as Polling Associates Inc. and Boomerang )
International, LLC, )
)
JONATHAN SMYTH, individually and also doing )
business as Polling Associates Inc., )
)
Defendants. )
_____ )

## AMENDED COMPLAINT FOR
## PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF

Plaintiff, the Federal Trade Commission ("FTC"), for its Amended Complaint alleges:

1.     The FTC brings this action under Sections 13(b) and 19 of the Federal Trade

Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57(b), and the Telemarketing and

Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. §§ 6101-6108, to

obtain temporary, preliminary, and permanent injunctive relief, rescission or reformation of

contracts, restitution, the refund of monies paid, disgorgement of ill-gotten monies, and other

equitable relief for Defendants' acts or practices in violation of Section 5(a) of the FTC Act, 15

U.S.C. § 45(a), and the FTC's Trade Regulation Rule entitled "Telemarketing Sales Rule"

("TSR"), 16 C.F.R. Part 310.

2

## JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345, and 15 U.S.C. §§ 45(a), 53(b), 57(b), 6102(c), and 6105(b).

3.      Venue is proper in this district under 28 U.S.C. § 1391(b), (c) and (d), and 15 U.S.C. § 53(b).

## PLAINTIFF

4.      The FTC is an independent agency of the United States Government created by statute.  15 U.S.C. §§ 41-58.  The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce.  The FTC also enforces the Telemarketing Act, 15 U.S.C. §§ 6101-6108.  Pursuant to the Telemarketing Act, the FTC promulgated and enforces the TSR, 16 C.F.R. Part 310, which prohibits deceptive and abusive telemarketing acts or practices.

5.      The FTC is authorized to initiate federal district court proceedings, by its own attorneys, to enjoin violations of the FTC Act and the TSR and to secure such equitable relief as may be appropriate in each case, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies.  15 U.S.C. §§ 53(b), 56(a)(2)(A) & (B), 57(b), 6102(c), and 6105(b).

## DEFENDANTS

6.      Defendant Acquinity Interactive, LLC is a Florida limited liability corporation with its principal place of business at 2200 SW 10th St., Deerfield Beach, FL 33442.  Acquinity

**FTC App'x 0004**

Interactive, LLC transacts or has transacted business in this district and throughout the United States.

7.     Defendant 7657030 Canada, Inc., which also does business as Acquinity Interactive, is a Canadian corporation with its registered address at 39 Chambertin, Kirkland, Quebec, Canada  H9H 5E3.  7657030 Canada, Inc. transacts or has transacted business in this district and throughout the United States.

8.     Defendant Garry Jonas ("Jonas") is the President of Acquinity Interactive, LLC and 7657030 Canada, Inc.  At all times material to this Complaint, acting alone or in concert with others, Jonas has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint.  Defendant Jonas, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

9.     Defendant Scott Modist ("Modist") is the Chief Financial Officer of Acquinity Interactive, LLC and an officer of 7657030 Canada, Inc.  At all times material to this Complaint, acting alone or in concert with others, Modist has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint.  Defendant Modist, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

10.     Defendant Joshua Greenberg ("Greenberg") is the Chief Technology Officer of Acquinity Interactive, LLC and an officer of 7657030 Canada, Inc.  At all times material to this Complaint, acting alone or in concert with others, Greenberg has formulated, directed,

4

controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint.  Defendant Greenberg, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

11.     Defendant Gregory Van Horn ("Van Horn") is the Chief Optimization Officer of Acquinity Interactive, LLC.  At all times material to this Complaint, acting alone or in concert with others, Van Horn has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint.  Defendant Van Horn, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

12.     Defendant Revenue Path E-Consulting Private Limited is an Indian company with its registered address at Office No. 501, 502, Sacred World, South Wing, Wanawadi, Pune, Maharahtra, 411040, India.  Revenue Path E-Consulting Private Limited transacts or has transacted business in this district and throughout the United States.

13.     Defendant Revenuepath Limited is a Cyprus company with its registered address at Athinodorous, 3, Dasoupoli, Strovolos, 2025, Nicosia, Cyprus.  Revenuepath Limited transacts or has transacted business in this district and throughout the United States.

14.     Defendant Worldwide Commerce Associates, LLC, which also does business as WCA ("WCA"), is a Nevada limited liability company with its principal place of business at 3651 Lindell Road, Las Vegas, Nevada 89103.  WCA is a wholly-owned subsidiary of Revenue Path E-Consulting Private Limited.  WCA transacts or has transacted business in this district and throughout the United States.

FTC App'x 0006

15.     Defendant Sarita Somani ("Somani") is a manager of WCA, the Chief Executive Officer of Revenue Path E-Consulting Private Limited, and a director and shareholder of Revenuepath Limited.  At all times material to this Complaint, acting alone or in concert with others, Somani has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint.  Somani, in connection with the matters alleged herein, transacts or has transacted business in this District and throughout the United States.

16.     Defendant Firebrand Group, S.L., LLC ("Firebrand"), is a Nevada limited liability company with its principal place of business at 7251 West Lake Boulevard, Suite 300, Las Vegas, Nevada 89103.   Firebrand transacts or has transacted business in this district and throughout the United States.

17.     Defendant Matthew Beucler ("Beucler") is the president of Firebrand.  At all times material to this Complaint, acting alone or in concert with others, Beucler has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint.  Defendant Beucler, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

18.     Defendant Burton Katz ("Katz"), who also does business as Polling Associates Inc. and Boomerang International, LLC, is an individual who resides in Miami Beach, Florida.  At all times material to this Complaint, acting alone or in concert with others, Katz has formulated, directed, controlled, had the authority to control, or participated in the acts and

6

practices set forth in this Complaint.  Defendant Katz, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

19.     Defendant Jonathan Smyth ("Smyth") who also does business as Polling Associates Inc., is an individual who resides in Miami Shores, Florida.  At all times material to this Complaint, acting alone or in concert with others, Smyth has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint.  Defendant Smyth, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.  Katz and Smyth are referred to herein as the "Premium SMS Defendants."

20.     Defendants Acquinity Interactive, LLC and 7657030 Canada, Inc. have operated as a common enterprise while engaging in the deceptive and unfair acts and practices alleged below.  These Defendants have conducted the business practices described below through interrelated companies that have common ownership, officers, managers, business functions, employees, and office locations.  Because these Defendants have operated as a common enterprise, each of them is jointly and severally liable for the acts and practices alleged below. Defendants Jonas, Modist, Greenberg, and Van Horn have formulated, directed, controlled, had authority to control, or participated in the acts and practices of these Defendants that constitute the common enterprise.  Acquinity Interactive, LLC, 7657030 Canada, Inc., Jonas, Modist, Greenberg, and Van Horn are referred to herein as "the Acquinity Defendants."

21.     Defendants Revenue Path E-Consulting Private Limited and Revenuepath Limited have operated as a common enterprise while engaging in the deceptive and unfair acts and

FTC App'x 0008

practices alleged below.   These Defendants have conducted the business practices described

below through interrelated companies that have common ownership, officers, managers, business

functions, employees, and office locations.   Because these Defendants have operated as a

common enterprise, each of them is jointly and severally liable for the acts and practices alleged

below.   Defendant Somani has formulated, directed, controlled, had authority to control, or

participated in the acts and practices of these Defendants that constitute the common enterprise.

Revenue Path E-Consulting Private Limited, Revenuepath Limited, and Somani are referred to

herein as "the Revenue Path Defendants."

<div align="center">

**COMMERCE**

</div>

22.     At all times material to this complaint, Defendants have maintained a substantial

course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act,

15 U.S.C. § 44.

<div align="center">

**DEFENDANTS' BUSINESS ACTIVITIES**

</div>

23.     Since at least June 2011, and continuing to the present, the Acquinity Defendants

and Revenue Path Defendants (collectively "the Acquinity and Revenue Path Defendants") have

offered to consumers purportedly free merchandise, such as $1,000 gift cards to large retailers,

and products such as an Apple iPad.   (Such products and items are referred to herein as

"promised free merchandise.")  The Acquinity and Revenue Path Defendants have advertised the

promised free merchandise on various websites they operate, including freegiftyards.com,

gadgetsngifts.com, get-goodies.com, and logic-boxes.com (the "free merchandise websites").

<div align="center">

8

</div>

**Text Message Spam**

24.     The Acquinity and Revenue Path Defendants attract consumers to the free merchandise websites through various means, including unsolicited commercial electronic text messages ("text message spam") that are sent directly or through third parties acting on behalf of and for the benefit of the Acquinity and Revenue Path Defendants.  The Acquinity and Revenue Path Defendants, either directly or through an intermediary, pay third parties for driving consumer traffic to the free merchandise websites through text message spam.  The Acquinity and Revenue Path Defendants are responsible for the transmission and content of this text message spam.

25.     Many such text messages represent, expressly or by implication, that the consumer receiving the message has won a contest, or has been specially selected to receive a gift or prize.  For example, the text messages contain statements such as: "You WON!  Go to www.prizeconfirm.com to claim your $1000 Walmart Gift Card Now!" or "FREE MSG: you have been chosen to test & keep the new iPad for free only today!!   Go to http://testnkeepcell.com and enter 2244 and your zipcode to claim it now!"

26.     Many, if not all, of the consumers who received the text message spam sent by or on behalf of the Acquinity or Revenue Path Defendants never agreed to be contacted by those Defendants or by those sending messages on their behalf.

27.     Some of the recipients of text message spam have wireless service plans that require them to pay a fixed fee for each text message received by their wireless handsets.  Accordingly, such recipients were required to pay a fee for the receipt of the text message spam.

9

**FTC App'x 0010**

28.     Other recipients of text message spam have wireless service plans that allow them a fixed, limited number of text messages per month without charge beyond their monthly service charge, with text messages that exceed the monthly allowance billed on a per-message basis. Accordingly, many such recipients had their monthly allowance of text messages reduced upon receipt of each text message spam sent by or on behalf of the Acquinity or Revenue Path Defendants.

29.     The consumer injury caused by the Acquinity and Revenue Path Defendants, or by third parties acting on those Defendants' behalf, cannot be reasonably avoided by consumers. Text message spam is routinely foisted upon consumers without their advance knowledge or permission.

30.     Text message spam sent by or on behalf of the Acquinity and Revenue Path Defendants does not create countervailing benefits to consumers or to competition that outweigh the harm caused by their unlawful activity.

31.     The text messages contain links that, when clicked on, take consumers to one of the websites described below.

**Text Message Spam Websites**

32.     Some consumers who click on the link in the text message spam are first taken to an Internet web page that recapitulates and expands upon the initial promised free merchandise offer ("text message spam page"). The text message spam page is operated by the third parties that send some of the text message spam, and those third parties are acting on behalf of and for the benefit of the Acquinity and Revenue Path Defendants. The Acquinity and Revenue Path

**FTC App'x 0011**

Defendants, either directly or indirectly through an intermediary, pay these third parties for driving consumer traffic to the free merchandise websites through the text message spam pages and are responsible for the content of these text message spam pages.  The text message spam page contains statements such as "Receive a FREE $1,000 Walmart Gift Card" in large type. Each text message spam page requires consumers to enter a "code" (sent as part of the text message spam) in a text box and click on a button labeled "Continue" to go to the next page. Consumers who provide their code on the text message spam page are told that they have a "winning code" and are then taken to a page on one of the free merchandise websites (the "landing page").

33.     In some instances, consumers who click on links in the text message spam are taken directly from the text message spam to the landing page without going through an intermediate text message spam page.

### The Free Merchandise Websites

34.     The landing page reinforces the message that the promised free merchandise is in fact "free" through statements such as "GET A FREE $1,000 WALMART GIFT CARD" or "Get the new iPad Free" and asks consumers to submit their email address or zip code in a text box.  Consumers who submit their email address or zip code and click a "Claim Now" or "Continue" button near the text box are taken to a second page called the "registration page."

35.     At the top of the registration page, in bold type, is a message such as "Congratulations!   Tell us where to send your Free $1,000 Walmart Gift Card!" or "Congratulations!  Tell us where to send your Free New iPad!"  The registration page then

**FTC App'x 0012**

directs consumers to fill out an online form eliciting personal information, including the consumer's gender, name, mailing address, e-mail address, date of birth, mobile phone number, and home phone number.  In many instances, consumers provide the requested personal information based on the representation that they are doing so to enable the promised free merchandise to be shipped to them.  Under the form on the registration page is a button labeled "Continue," which consumers must click to proceed.

36.     Once consumers have submitted their personal information on the registration page and clicked on the "Continue" button, they are led to a page or set of pages on the websites where consumers are required to fill out a survey (the "survey page").  The survey page often states "[name], your $1,000 Walmart Gift Card is waiting!" or "[name], your Free New iPad is waiting!"  To proceed past the survey page, consumers must provide information regarding, among other things, their: (1) job status; (2) income; (3) credit score; (4) credit card debt; (5) medical condition; (6) health insurance; and (7) car and home ownership.  As with the registration page, the survey pages represent that consumers are submitting their personal information in order to receive the promised free merchandise.

37.     After consumers complete the survey page, the free merchandise websites lead them through a series of web pages containing offers for various goods and services from third parties.  A consumer must accept (and often pay for) – in the parlance of the free merchandise websites, "fully complete" or "participate in" – a certain number of offers made by the third parties to qualify for the promised free merchandise.  The free merchandise websites do not

clearly and conspicuously disclose the costs and obligations associated with participating in the third-party promotions.

38.     The consumer usually must complete a total of thirteen (13) offers in order to qualify for the promised free merchandise.  Clicking on each offer reveals what the consumer must do to "complete" or "participate in" the offer.  In most cases, completing an offer entails paying money or incurring some other obligation, such as applying and qualifying for credit cards.

39.     Some of the offers have free trial periods, but require consumers to participate for a minimum period of time to qualify for the promised free merchandise and to pay an initial shipping and handling charge.  Moreover, many of these offers also contain negative option components in which consumers who do not cancel will be billed automatically and indefinitely.

40.     In many instances, consumers stop trying to qualify for the promised free merchandise, whether because of the cost involved, the time and effort required, or because consumers thought that, by inputting their contact information and completing the landing page, registration page, or survey page, they qualified for the promised free merchandise.  Consumers have expended money, provided sensitive personal information, or incurred other obligations in the pursuit of the promised free merchandise.  However, because they have not completed all of the required third-party promotions, they do not receive the promised free merchandise.

41.     In most if not all instances, it is impossible for a consumer to qualify for the promised free merchandise without spending money.

**FTC App'x 0014**

42.     The free merchandise websites, and other websites operated by and for the benefit of the Acquinity and Revenue Path Defendants, including the landing pages, registration pages, and survey pages, do not clearly and conspicuously disclose that, to obtain the promised free merchandise, consumers must pay money or incur other costs or obligations.  Instead, the free merchandise websites attempt to qualify the representations about the promised free merchandise only in separate hyperlinked pages or in print not of a type, size, or location sufficiently noticeable for an ordinary consumer to read and comprehend it.

43.     The free merchandise websites, and other websites operated by and for the benefit of the Acquinity and Revenue Path Defendants, including the landing pages, registration pages, and survey pages, represent that Defendants collect consumers' personal information to send them the promised free merchandise.  However, few if any consumers ever receive the promised free merchandise, and the Acquinity and Revenue Path Defendants instead proceed to sell or otherwise share with third parties the personal information they have collected.  These websites refer to sharing consumers' personal information only in separate hyperlinked pages or in print not of a type, size, or location sufficiently noticeable for an ordinary consumer to read and comprehend it.

## Premium SMS Services

44.     After consumers provide their requested personal information on the registration page, one of the offers they view on the free merchandise websites is marketed by the Acquinity and Revenue Path Defendants and the Premium SMS Defendants.  As part of this offer, the Acquinity and Revenue Path Defendants and the Premium SMS Defendants represent to

14

consumers that, to claim the free merchandise, they should submit their mobile telephone number.  This offer refers to the promised free merchandise and states, "your $1,000 Walmart Gift Card is waiting!" or "Claim your FREE iPad2 in your Color Choice."  The offer encourages consumers to submit or confirm their mobile telephone numbers with prominent language such as, "PLEASE CONFIRM YOUR VALID CELL NUMBER BELOW" or "Confirm your cell phone number to continue."  Adjacent to that prominent language is a field in which consumers can enter their mobile telephone number.  Adjacent to that field is a button labeled "SUBMIT AND CONTINUE TO NEXT PAGE" or "CONFIRM."  In some cases, the Acquinity and Revenue Path Defendants and the Premium SMS Defendants have already "pre-populated" consumers' mobile telephone into the field based on the consumers' submission of that telephone number on the registration page, so that consumers merely need to "confirm" their already-entered number.

45.     Consumers who submit or confirm their mobile telephone numbers remain on the free merchandise websites and are instructed by the Acquinity and Revenue Path Defendants and the Premium SMS Defendants to submit a four-digit PIN number through prominent language such as, "CONFIRM YOUR 4-DIGIT PIN #."  Consumers who submit or confirm their mobile telephone numbers also receive a text message (sometimes known as "SMS" message) from the Premium SMS Defendants, transmitting the four-digit PIN number for consumers to enter on the free merchandise websites.

46.     Consumers who submit the transmitted four-digit PIN are registered for a premium SMS service in which they receive for a monthly charge periodic SMS messages on

15

**FTC App'x 0016**

topics such as trivia or coupon codes from the Premium SMS Defendants.  The monthly charge for this service typically is $9.99 billed on consumers' mobile telephone bills.

47.    The Acquinity and Revenue Path Defendants and the Premium SMS Defendants do not clearly and conspicuously disclose that consumers who submit or confirm their mobile telephone numbers and enter four-digit PIN numbers will have a monthly charge added to their mobile telephone accounts for purported services unrelated to the free merchandise.  Instead, the only disclosure of this charge appears in separate hyperlinked pages or in print not of a type, size, or location sufficiently noticeable for an ordinary consumer to read and comprehend it.

### Initiating Robocalls Without Express Written Consent

48.    The Acquinity and Revenue Path Defendants supply personal information that consumers provide on the free merchandise websites to WCA, Firebrand, and Beucler.  WCA, Firebrand and Beucler then use this information to send those consumers prerecorded voice messages through telephone calls ("robocalls" or "prerecorded messages").

49.    The free merchandise websites fail to clearly and conspicuously disclose that consumers' personal contact information will be transferred to third parties and then used to deliver prerecorded messages to consumers.  Instead, the free merchandise websites provide any such disclosures only in separate hyperlinked pages or in print not of a type, size, or location sufficiently noticeable for an ordinary consumer to read and comprehend the disclosures.

50.    Through a program called Special Offer Service ("SOS"), WCA, Firebrand, and Beucler deliver to consumers robocalls that include offers for various types of goods and services, including travel, home security, satellite television, and entertainment.  Consumers who

16

elect to respond to an offer presented on a SOS robocall are transferred to one of several third-party offer sponsors willing to fulfill a particular offer.

51.     WCA, Firebrand, and Beucler sell a telemarketing service that delivers robocalls to consumers.  WCA, Firebrand, and Beucler place outbound SOS robocalls to consumers. WCA, Firebrand, and Beucler also identify sponsors willing to fulfill SOS offers and manage compliance policies and procedures.

52.     WCA, Firebrand, and Beucler are "sellers" and/or "telemarketers" engaged in "telemarketing," as defined by the TSR, 16 C.F.R. 310.2(aa), (cc), and (dd).  WCA, Firebrand, and Beucler have engaged in a plan, program, or campaign conducted to induce the purchase of goods or services by use of one or more telephones and which involves more than one interstate telephone call.

53.     In numerous instances, WCA, Firebrand, and Beucler have obtained the telephone numbers used for making robocalls from information provided by consumers on the free merchandise websites, and WCA, Firebrand, and Beucler did not obtain such consumers' express written agreement to authorize WCA, Firebrand or Beucler to deliver prerecorded messages to the consumers.  Consumers were not provided a clear and conspicuous disclosure that they were authorizing WCA, Firebrand or Beucler to deliver prerecorded messages to the consumers.  In addition, consumers were required to provide their information on the free merchandise websites as a condition to obtaining the promised free merchandise.

54.     The Acquinity and Revenue Path Defendants have provided substantial assistance or support to WCA, Firebrand, and Beucler, including, but not limited to, by providing a list of

FTC App'x 0018

consumers to be called, when the Acquinity and Revenue Path Defendants knew or consciously avoided knowing that WCA, Firebrand, and Beucler were engaged in initiating outbound telephone calls delivering prerecorded messages to induce the purchase of goods or services in violation of the TSR.

## VIOLATIONS OF THE FTC ACT

55.     Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

56.     Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.

57.     Acts or practices are unfair under Section 5 of the FTC Act if they cause substantial injury to consumers that consumers cannot reasonably avoid themselves and that is not outweighed by countervailing benefits to consumers or competition. 15 U.S.C. § 45(n).

## COUNT I

58.     In numerous instances, in connection with the advertising, marketing, promotion, or distribution of advertised offers, the Acquinity and Revenue Path Defendants have represented, directly or indirectly, expressly or by implication, that the promised free merchandise is without cost or obligation.

59.     In numerous instances in which the Acquinity and Revenue Path Defendants have made the representation set forth in Paragraph 58 of this Complaint, they have failed to disclose or disclose adequately to consumers material terms and conditions of the offer, including:

18

**FTC App'x 0019**

      a.     that consumers must pay money or other consideration to obtain the promised free merchandise; and

      b.     the costs and obligations to obtain the promised free merchandise.

60.     The Acquinity and the Revenue Path Defendants' failure to disclose or disclose adequately the material information described in Paragraph 59 above, in light of the representation described in Paragraph 58 above, constitutes a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## COUNT II

61.     In numerous instances, in connection with the advertising, marketing, promotion, or distribution of advertised offers, the Acquinity and Revenue Path Defendants have represented, directly or indirectly, expressly or by implication, that they collect consumers' personal information to send consumers the promised free merchandise.

62.     In truth and in fact, in numerous instances in which the Acquinity and Revenue Path Defendants have made the representation set forth in Paragraph 61 of this Complaint, they collect consumers' personal information not to send consumers the promised free merchandise, but instead to sell or otherwise share that information with third parties.

63.     Therefore, the Acquinity and Revenue Path Defendants' representation as set forth in Paragraph 61 of this Complaint is false or misleading and constitutes a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## COUNT III

**FTC App'x 0020**

64.    In numerous instances, the Acquinity and Revenue Path Defendants' practice of transmitting or procuring for their benefit the transmission of unauthorized or unsolicited commercial electronic text messages to the mobile telephones and other wireless devices of consumers in the United States has caused or is likely to cause substantial injury to consumers that consumers cannot reasonably avoid themselves and that is not outweighed by countervailing benefits to consumers or competition.

65.    Therefore, Defendants' practice as described in Paragraph 64 is unfair and violates Section 5 of the FTC Act, 15 U.S.C. §§ 45(a) and 45(n).

## COUNT IV

66.    In numerous instances, in connection with the advertising, marketing, promotion, or distribution of advertised offers, the Acquinity and Revenue Path Defendants and the Premium SMS Defendants have represented, directly or indirectly, expressly or by implication, that consumers should enter or confirm their mobile telephone number and an associated PIN number to claim the promised free merchandise.

67.    In numerous instances in which the Acquinity and Revenue Path Defendants and the Premium SMS Defendants have made the representation set forth in Paragraph 66 of this Complaint, they have failed to disclose or disclose adequately material terms and conditions of the offer, including that consumers who submit or confirm their mobile telephone numbers and enter four-digit PIN numbers will have a monthly charge added to their mobile telephone accounts for purported services unrelated to the free merchandise.

**FTC App'x 0021**

68.     The Acquinity and Revenue Path Defendants' and the Premium SMS Defendants'

failure to disclose or disclose adequately the material information described in Paragraph 67

above, in light of the representation described in Paragraph 66 above, constitutes a deceptive act

or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## VIOLATIONS OF THE TELEMARKETING SALES RULE

69.     Congress directed the FTC to prescribe rules prohibiting abusive and deceptive

telemarketing acts or practices pursuant to the Telemarketing Act, 15 U.S.C. §§ 6101-6108.  The

FTC adopted the original Telemarketing Sales Rule in 1995, extensively amended it in 2003, and

amended certain sections thereafter. 16 C.F.R. Part 310.

70.     WCA, Firebrand, and Beucler are "sellers" and/or "telemarketers" engaged in

"telemarketing," and these Defendants have initiated, or have caused telemarketers to initiate,

"outbound telephone call[s]" to consumers to induce the purchase of good or services, as those

terms are defined in the TSR, 16 C.F.R. § 310.2(aa), (cc), and (dd).

71.     Under the TSR, an "outbound telephone call" means a telephone call initiated by

a telemarketer to induce the purchase of goods or services or to solicit a charitable contribution.

16 C.F.R. § 310.2(v).

72.     As amended, effective September 1, 2009, the TSR prohibits initiating a

telephone call that delivers a prerecorded message to induce the purchase of any good or service

unless the seller has obtained from the recipient of the call an express agreement, in writing, that

evidences the willingness of the recipient to receive calls that deliver prerecorded messages by or

on behalf of a specific seller.  The express agreement must include the recipient's telephone

FTC App'x 0022

number and signature, must be obtained after a clear and conspicuous disclosure that the purpose

of the agreement is to authorize the seller to place prerecorded calls to such person, and must be

obtained without requiring, directly or indirectly, that the agreement be executed as a condition

of purchasing any good or service.  16 C.F.R. § 310.4(b)(1)(v)(A).

73.     It is a violation of the TSR for any person to provide "substantial assistance or

support" to any seller or telemarketer when that persons "knows or consciously avoids knowing"

that the seller or telemarketer is engaged in any act or practice that violates Sections 310.3(a),

(c), or (d), or Section 310.4 of the Rule.  16 C.F.R. § 310.3(b).

74.     Pursuant to Section 3(c) of the Telemarketing Act, 15 U.S.C. § 6102(c), and

Section 18(d)(3) of the FTC Act, 15 U.S.C. § 57(a)(d)(3), a violation of the TSR constitutes an

unfair or deceptive act or practice in or affecting commerce, in violation of Section 5(a) of the

FTC Act, 15 U.S.C. § 45(a).

## COUNT V

75.     In numerous instances on or after September 1, 2009, Defendants WCA,

Firebrand, and Beucler have initiated outbound telephone calls delivering prerecorded messages

to induce the purchase of goods or services when the persons to whom these telephone calls were

made had not expressly agreed, in writing, to authorize the seller to place prerecorded calls to

such persons.

76.     The acts or practices of WCA, Firebrand, and Beucler, as described in Paragraph

75, above, are abusive telemarketing acts or practices that violate the TSR, 16 C.F.R.

§ 310.4(b)(1)(v).

**FTC App'x 0023**

## COUNT VI

77.     The Acquinity Defendants and the Revenue Path Defendants have provided substantial assistance or support to WCA, Firebrand, and Beucler, including, but not limited to, providing a list of consumers to be called, when the Acquinity Defendants and the Revenue Path Defendants knew or consciously avoided knowing that WCA, Firebrand, and Beucler were engaged in violations of Section 310.4 of the TSR.

78.     The Acquinity and Revenue Path Defendants' substantial assistance, or support, as described in Paragraph 77 above, violates the TSR, 16 C.F.R. § 310.3(b).

## CONSUMER INJURY

79.     Consumers have suffered and will continue to suffer substantial injury as a result of Defendants' violations of the FTC Act and the TSR.   In addition, Defendants have been unjustly enriched as a result of their unlawful acts or practices.   Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers, reap unjust enrichment and harm the public interest.

## THIS COURT'S POWER TO GRANT RELIEF

80.     Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to grant injunctive and such other relief as the Court may deem appropriate to halt and redress violations of any provision of law enforced by the FTC.   The Court, in the exercise of its equitable jurisdiction, may award ancillary relief, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies, to prevent and remedy any violation of any provision of law enforced by the FTC.

**FTC App'x 0024**

81. Section 19 of the FTC Act, 15 U.S.C. § 57b, and Section 6(b) of the Telemarketing Act, 15 U.S.C. § 6105(b), authorize this Court to grant such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of the TSR, including the rescission or reformation of contracts, and the refund of money.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff FTC, pursuant to Sections 13(b) and 19 of the FTC Act, 15 U.S.C. §§ 53(b) and 57(b), Section 6(b) of the Telemarketing Act, 15 U.S.C. § 6105(b), and the Court's own equitable powers, requests that the Court:

1. Award Plaintiff such preliminary injunctive and ancillary relief as may be necessary to avert the likelihood of consumer injury during the pendency of this action and to preserve the possibility of effective final relief, including, but not limited to, temporary and preliminary injunctions, an order freezing assets, immediate access, and the appointment of a receiver;

2. Enter a permanent injunction to prevent future violations of the FTC Act and the TSR by Defendants;

3. Award such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of the FTC Act and the TSR, including, but not limited to, rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies; and

4. Award Plaintiff the costs of bringing this action, as well as such other and additional relief as the Court may determine to be just and proper.

FTC App'x 0025

Dated:  June 16, 2014

Respectfully submitted,
JONATHAN E. NUECHTERLEIN
General Counsel

/s/ Steven Wernikoff
STEVEN M. WERNIKOFF
JOHN C. HALLERUD
MATTHEW H. WERNZ
Federal Trade Commission
55 West Monroe Street, Suite 1825
Chicago, Illinois 60603
(312) 960-5634 [telephone]
(312) 960-5600 [facsimile]

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

**FTC App'x 0026**

# TAB
# AQ-DE.177

United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Federal Trade Commission, Plaintiff | ) |
| | ) |
| v. | ) |
| | ) Civil Action No. 14-60166-Civ-Scola |
| | ) |
| Acquinity Interactive, LLC, and | ) |
| others, Defendants | ) |

**Amended Preliminary Injunction**

This matter is before the Court upon the Contempt Defendants' unopposed motion to modify preliminary injunction. The Court has reviewed the Contempt Defendants' motion, and **grants** the relief sought. (**ECF No. 176**.) The Court modifies the preliminary injunction (ECF No. 175) previously entered, as set forth below.

**Background**

On October 16, 2014, the Court entered a Stipulated Order for Permanent Injunction and Other Equitable Relief as to Defendants Burton Katz and Jonathan Smyth (the "2014 Order"). The 2014 Order resolved the case filed by the Federal Trade Commission ("FTC") as to Defendant Burton Katz. The 2014 Order provided that Katz, along with his "officers, agents, servants, and employees, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly," in "connection with the advertising, marketing, promotion, offering for sale, sale, or distribution of any product or service," are "permanently restrained and enjoined from making, or assisting others in making, expressly or by implication, any false or misleading material misrepresentation. (ECF No. 132, at 3.)

In December 2019, the FTC filed a separate complaint against the Contempt Defendants and others, alleging their deceptive websites violated Section 5 of the FTC Act. The case is styled *FTC v. On Point Global LLC, et al.*, 19-25046-Civ (S.D. Fla.) (the "*On Point Matter*"). In the *On Point Matter*, the FTC concurrently sought a temporary restraining order, including an asset freeze. The Court granted the FTC's request for a temporary restraining order on December 13, 2019, freezing the Contempt Defendants' assets. The FTC noted in its initial filings in the *On Point Matter* that the complaint in *FTC v. On Point Global* was related to this matter, that the FTC intended to file a motion for contempt in this matter, and that the factual and legal issues in the two cases overlapped. (*On Point Matter*, ECF No. 5.)

**FTC App'x 0028**

On January 14, 2020, following a two-day evidentiary hearing on the FTC's motion for a Preliminary Injunction in the *On Point Matter*, the Court entered a Preliminary Injunction, which continued the freeze on the Contempt Defendants' assets.

In February 2020, the FTC moved for an order to show cause why Burton Katz and the Corporate Contempt Defendants should not be held in contempt for their violations of the 2014 Order (the "First Contempt Motion"), seeking civil contempt compensatory remedies for those violations. In April 2021, the FTC moved for an order to show cause why Robert Zangrillo, Brent Levison, and Elisha Rothman should not be held in contempt for their violations of the 2014 Order (the "Second Contempt Motion"), which sought the same civil contempt compensatory remedies against those defendants. With the April 2021, motion, the FTC filed a motion for a temporary restraining order freezing the Contempt Defendants' Assets (the "TRO Motion").

## **Findings of Fact**

The Court, having considered the TRO Motion, First Contempt Motion, Second Contempt Motion, declarations, exhibits, and the memorandum of points and authorities filed in support thereof[1]; having heard testimony and reviewed evidence concerning the business practices of the Contempt Defendants during the two-day preliminary injunction hearing in the *On Point Matter*; and being otherwise fully advised, finds that:

A.  The Court has jurisdiction over this matter for all purposes as provided in Section XI (Retention of Jurisdiction) of the 2014 Order.

B.  The 2014 Order is lawful, valid, and unambiguous.

C.  There is good cause to believe the Contempt Defendants has actual notice of the 2014 Order and the ability to comply with it.

D.  There is good cause to believe that the Contempt Defendants have engaged in acts or practices that violate Section II of the 2014 Order, and that the Plaintiff is therefore likely to prevail on the merits of this action. As the Court previously ruled on January 14, 2020, following a two-day evidentiary hearing during which the Contempt Defendants were represented by counsel, the Plaintiff demonstrated by the records of undercover purchases; consumer complaints and declarations; expert testing; corporate, banking, and payment processing records; and additional documents filed by the FTC, the FTC has established a likelihood of success in showing that Contempt Defendants, with

---

[1] "At the preliminary injunction stage, a district court may rely on affidavits and hearsay materials which would not be admissible evidence for a permanent injunction, if the evidence is appropriate given the character and objectives of the injunctive proceeding." *Levi Strauss and Co. b. Sunrise Intern. Trading*, 51 F.3d 982 (11th Cir. 1995).

**FTC App'x 0029**

knowledge of the 2014 Order, have made, or assisted others in making, expressly by implication, false or misleading material representations. The Contempt Defendants deceived consumers by misrepresenting the services they offer, thus inducing consumers to pay money or divulge personal information under false pretenses. The Court need not, as a matter of law, depend on a consumer survey to prove that the websites had a tendency to deceive. *FTC v. Brown & Williamson Tobacco Corp.*, 778 F.2d 35, 40-41 (D.C. Cir. 1985) ("Evidence of consumer reaction usually takes the form of market research or consumer surveys, but a trial court may accord other forms of evidence substantial weight if that evidence appears reliable."). Although the consumer surveys presented in this case by the FTC had some minor flaws, the results clearly show that consumers were misled by the websites. And, thus independent evidence is unnecessary in this case. The Court finds that the websites were patently misleading. The websites were cleverly designed so that even though disclosures appeared on many or most of the pages, consumers' attention would be drawn to links and language in larger, more colorful font that directed them to the service they were seeking (such as renewing a driver's license) and most consumers would likely ignore the disclosures written in relatively smaller and pale-colored font. And, if a consumer did read the disclosures, they would learn they could purchase a guide and would also learn that the site is a privately-owned company selling guides that can be obtained for free elsewhere on governmental sites. But, most importantly, they were not clearly informed that they could not obtain the government service they were misled to believe was available to them.

E. There is good cause to believe that immediate and irreparable damage to the Court's ability to grant effective full compensatory contempt relief will occur from the sale, transfer, destruction or other disposition or concealment by Contempt Defendants of their assets or records, unless Contempt Defendants are immediately restrained and enjoined by order of this Court.

F. There is good cause to believe that a reasonable approximation of the total consumer loss caused by the Contempt Defendants' violation of the 2014 Order, which represents the full compensatory relief, equals $104,723,274.62.

G. Good cause exists for freezing the Contempt Defendants' Assets.

H. Weighing the equities and considering the Plaintiff's likelihood of ultimate success on the merits, a preliminary injunction with an asset freeze is in the public interest.

I. This Court has authority to issue this Order pursuant to its own inherent authority, *see United States v. United Mine Workers of America*, 300 U.S. 258, 290, 301 (1947), and the All Writs Act, 28 U.S.C. § 1651.

**FTC App'x 0030**

J.  No security is required of any agency of the United States for Issuance of a t preliminary injunction. Fed. R. Civ. P. 65(c).

### Definitions

For the purposes of this Order, the following definitions shall apply:

A. **Asset"** means any legal or equitable interest in, right to, or claim to, any property, where located and by whomever held.

B. **"Corporate Contempt Defendant"** means On Point Global LLC; On Point Employment LLC; On Point Guides LLC f/k/a Rogue Media Services LLC; DG DMV LLC; Waltham Technologies LLC; Cambridge Media Series LLC f/k/a License America Media Series LLC; Issue Based Media LLC; Dragon Global LLC; Dragon Global Management LLC; Dragon Global Holdings LLC; Direct Market LLC; Bronco Family Holdings LP a/k/a Bronco Holdings Family LP; and each of their subsidiaries, affiliates, successors, and assigns.

C. **"Contempt Defendant(s)"** means the Corporate Contempt Defendants and Individual Contempt Defendants, individually, collectively, or in any combination.

D. **"Document"** is synonymous in meaning and equal in scope to the usage of "document" and "electronically stored information" in Federal Rule of Civil Procedure 34(a), and includes writings, drawings, graphs, charts, photographs, sound and video recordings, images, Internet sites, web pages, websites, electronic correspondence, including e-mail and instant messages, contracts, accounting data, advertisements, FTP Logs, Server Access Logs, books, written or printed records, handwritten notes, telephone logs, telephone scripts, receipt books, ledgers, personal and business canceled checks and check registers, bank statements, appointment books, computer records, customer or sales databases and any other electronically stored information, including Documents located on remote servers or cloud computing systems, and other data or data compilations from which information can be obtained directly or, if necessary, after translation into a reasonably usable form. A draft or non-identical copy is a separate document within the meaning of the term.

E. **"Electronic Data Host"** means any person or entity in the business of storing, hosting, or otherwise maintaining electronically stored information. This includes, but is not limited to, any entity hosting a website or server, and any entity providing "cloud based" electronic storage.

F. **"Individual Contempt Defendant(s)"** means Burton Katz, Brent Levison, and Elisha Rothman, individually, collectively, or in any combination.

G. **"Receiver"** means Melanie Damian, as the Receiver in the On Point Matter, and any deputy receivers she names.

**FTC App'x 0031**

## Order

### I.   Asset Freeze

**It is further ordered** that the Contempt Defendants and their officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who received actual notice of this Order, whether acting directly or indirectly, are hereby preliminarily restrained and enjoined from:

A. Transferring, liquidating, converting, encumbering, pledging, loaning, selling, concealing, dissipating, disbursing, assigning, relinquishing, spending, withdrawing, granting a lien or security interest or other interest in, or otherwise disposing of any Assets that are:

   1. owned or controlled, directly or indirectly, by any Contempt Defendant;

   2. held, in part or in whole, for the benefit of any Contempt Defendant; or

   3. owned or controlled by, in the actual or constructive possession of, or otherwise held for the benefit of, any corporation, partnership, asset protection trust, or other entity that is directly or indirectly owned, managed or controlled by any Contempt Defendant.

B. Opening or causing to be opened any safe deposit boxes, commercial mail boxes, or storage facilities titled in the name of any Contempt Defendant or subject to access by any Contempt Defendant, except as necessary to comply with written requests from the Receiver acting pursuant to its authority in the On Point Matter;

C. Incurring charges or cash advances on any credit, debit, or ATM card issued in the name, individually or jointly, of any Corporate Contempt Defendant or any corporation, partnership, or other entity directly or indirectly owned, managed, or controlled by any Contempt Defendant or of which any Contempt Defendant is an officer, director, member, or manager. This includes any corporate bankcard or corporate credit card account for which any Contempt Defendant is, or was on the date that this Order was signed, an authorized signor; and

D. Cashing any checks or depositing any money orders or cash received from consumers, clients, or customers of any Contempt Defendant.

The Assets affected by this Section shall include: (1) all Assets of Contempt Defendants as of December 13, 2019; and (2) Assets obtained by Contempt Defendants after December 13, 2019, if those Assets are derived from any activity that is the subject of or that is prohibited by this Order. This

FTC App'x 0032

Section does not prohibit any transfers to the Receiver or repatriation of foreign Assets specifically required by this order.

## II.   **Duties of Asset Holders and Other Third Parties**

**It is further ordered** that any financial or brokerage institution, Electronic Data Host, credit card processor, payment processor, merchant bank, acquiring bank, independent sales organization, third party processor, payment gateway, insurance company, business entity, or person who receives actual notice of this Order (by service or otherwise) that:

(a) has held, controlled, or maintained custody, through an account or otherwise, of any Document on behalf of any Contempt Defendant or any Asset that has been owned or controlled, directly or indirectly, by any Contempt Defendant; held, in part or in whole, for the benefit of any Contempt Defendant; in the actual or constructive possession of any Contempt Defendant; or owned or controlled by, in the actual or constructive possession of, or otherwise held for the benefit of, any corporation, partnership, asset protection trust, or other entity that is directly or indirectly owned, managed or controlled by any Contempt Defendant;

(b) has held, controlled, or maintained custody, through an account or otherwise, of any Document or Asset associated with credits, debits, or charges made on behalf of any Contempt Defendant, including reserve funds held by payment processors, credit card processors, merchant banks, acquiring banks, independent sales organizations, third party processors, payment gateways, insurance companies, or other entities; or

(c) has extended credit to any Contempt Defendant, including through a credit card, shall:

A. Hold, preserve, and retain within its control and prohibit the withdrawal, removal, alteration, assignment, transfer, pledge, encumbrance, disbursement, dissipation, relinquishment, conversion, sale, or other disposal of any such Document or Asset, as well as all Documents or other property related to such Assets, except by further order of this Court; provided, however, that this provision does not prohibit an Individual Contempt Defendant from incurring charges on a personal credit card established prior to entry of this Order, up to the pre-existing credit limit;

B. Deny any person, except the Receiver, access to any safe deposit box, commercial mail box, or storage facility that is titled in the name of any Contempt Defendant, either individually or jointly, or otherwise subject to access by any Contempt Defendant;

C. Provide Plaintiff's counsel and the Receiver, within three (3) days of receiving a copy of this Order, a sworn statement setting forth, for each Asset or account covered by this Section:

1. The identification number of each such account or Asset;
2. The balance of each such account, or a description of the nature and value of each such Asset as of the close of business on the day on which this Order is served, and, if the account or other Asset has been closed or removed, the date closed or removed, the total funds removed in order to close the account, and the name of the person or entity to whom such account or other Asset was remitted; and
3. The identification of any safe deposit box, commercial mail box, or storage facility that is either titled in the name, individually or jointly, of any Contempt Defendant, or is otherwise subject to access by any Contempt Defendant.

D. Upon the request of Plaintiff's counsel or the Receiver, promptly provide Plaintiff's counsel and the Receiver with copies of all records or other Documents pertaining to any account covered by this Section or Asset, including originals or copies of account applications, account statements, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, wire transfers and wire transfer instructions, all other debit and credit instruments or slips, currency transaction reports, 1099 forms, and all logs and records pertaining to safe deposit boxes, commercial mail boxes, and storage facilities.

Provided, however, that this Section does not prohibit any transfers to the Receiver or repatriation of foreign Assets specifically required by this Order.

### III.   Foreign Asset Repatriation

**It is further ordered** that within five (5) days following the service of this Order, each Contempt Defendant shall:

A. To the extent not already completed, provide Plaintiff's counsel and the Receiver with a full accounting, verified under oath and accurate as of the date of this Order, of all Assets, Documents, and accounts outside of the United States which are: (1) titled in the name, individually or jointly, of any Contempt Defendant; (2) held by any person or entity for the benefit of any Contempt Defendant or for the benefit of any corporation, partnership, asset protection trust, or other entity that is directly or indirectly owned, managed or controlled by any Defendant; or (3) under the direct or indirect control, whether jointly or singly, of any Defendant;

**FTC App'x 0034**

B. To the extent not already completed, take all steps necessary to provide Plaintiff's counsel and Receiver access to all Documents and records that may be held by third parties located outside of the territorial United States of America, including signing the Consent to Release of Financial Records appended to this Order as **Attachment A**;

C. Transfer to the territory of the United States all Documents and Assets located in foreign countries which are: (1) titled in the name, individually or jointly, of any Contempt Defendant; (2) held by any person or entity for the benefit of any Contempt Defendant or for the benefit of any corporation, partnership, asset protection trust, or other entity that is directly or indirectly owned, managed, or controlled by any Contempt Defendant; or (3) under the direct or indirect control, whether jointly or singly, of any Contempt Defendant; and

D. The same business day as any repatriation, (1) notify the Receiver and counsel for Plaintiff of the name and location of the financial institution or other entity that is the recipient of such Documents or Assets; and (2) serve this Order on any such financial institution or other entity.

## IV.   <u>Non-Interference With Repatriation</u>

**It is further ordered** that Contempt Defendants, Contempt Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are hereby preliminarily restrained and enjoined from taking any action, directly or indirectly, which may result in the encumbrance or dissipation of foreign Assets, or in the hindrance of the repatriation required by this Order, including, but not limited to:

A. Sending any communication or engaging in any other act, directly or indirectly, that results in a determination by a foreign trustee or other entity that a "duress" event has occurred under the terms of a foreign trust agreement until such time that all Contempt Defendants' Assets have been fully repatriated pursuant to this Order; or

B. Notifying any trustee, protector or other agent of any foreign trust or other related entities of either the existence of this Order, or of the fact that repatriation is required pursuant to a court order, until such time that all Contempt Defendants' Assets have been fully repatriated pursuant to this Order.

**FTC App'x 0035**

## V.   <u>Consumer Credit Reports</u>

**It is further ordered** that Plaintiff may obtain credit reports concerning any Contempt Defendants pursuant to Section 604(a)(1) of the Fair Credit Reporting Act, 15 U.S.C. 12 1681b(a)(1), and that, upon written request, any credit reporting agency from which such reports are requested shall provide them to Plaintiff.

## VI.   <u>Preservation of Records</u>

**It is further ordered** that Contempt Defendants, Contempt Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are hereby preliminarily restrained and enjoined from:

A.  Destroying, erasing, falsifying, writing over, mutilating, concealing, altering, transferring, or otherwise disposing of, in any manner, directly or indirectly, Documents that relate to: (1) the business, business practices, Assets, telephone records, email account records, or business or personal finances of any Contempt Defendant; (2) any webpage or website operated, in whole or in part, on any Contempt Defendant's or Contempt Defendants' behalf; (3) any electronic communications sent or received by Contempt Defendants; (4) the business practices or finances of entities directly or indirectly under the control of any Contempt Defendant; or (5) the business practices or finances of entities directly or indirectly under common control with any other Contempt Defendant; and

B.  Failing to create and maintain Documents that, in reasonable detail, accurately, fairly, and completely reflect Contempt Defendants' incomes, disbursements, transactions, and use of Contempt Defendants' Assets.

## VII.   <u>Non-Interference With The Receiver's Rights, Duties, and Obligations in the *On Point Matter*</u>

**It is further ordered** that this Order does not affect, alter, or limit any right, duty, or obligation of Melanie Damian, as the Receiver in the On Point Matter, who was appointed as the Receiver in the preliminary injunction in the *On Point Matter*. (*On Point Matter*, ECF No. 126.)

## VIII.   <u>Stay of Actions</u>

**It is further ordered** that, except by leave of this Court, during the pendency of the receivership ordered herein, Contempt Defendants, Contempt Defendants' officers, agents, employees, attorneys, and all other persons in

FTC App'x 0036

active concert or participation with any of them, who receive actual notice of this Order, and their corporations, subsidiaries, divisions, or affiliates, and all investors, creditors, stockholders, lessors, customers and other persons seeking to establish or enforce any claim, right, or interest against or on behalf of Contempt Defendants, and all others acting for or on behalf of such persons, are hereby enjoined from taking action that would interfere with the exclusive jurisdiction of this Court over the Assets or Documents of the Contempt Defendants, including, but not limited to:

A. Filing or assisting in the filing of a petition for relief under the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, or of any similar insolvency proceeding on behalf of the Contempt Defendants;

B. Commencing, prosecuting, or continuing a judicial, administrative, or other action or proceeding against the Contempt Defendants, including the issuance or employment of process against the Contempt Defendants, except that such actions may be commenced if necessary to toll any applicable statute of limitations; or

C. Filing or enforcing any lien on any asset of the Corporate Contempt Defendants, taking or attempting to take possession, custody, or control of any Asset of the Corporate Contempt Defendants; or attempting to foreclose, forfeit, alter, or terminate any interest in any Asset of the Corporate Contempt Defendants, whether such acts are part of a judicial proceeding, are acts of self-help, or otherwise.

Provided, however, that this Order does not stay: (1) the commencement or continuation of a criminal action or proceeding; (2) the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power; or (3) the enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power.

## IX.   Service of this Order

**It is further ordered** that copies of this Order as well as the Motion for temporary restraining order, which the Court construed as a motion for preliminary injunction, and all other pleadings, Documents, and exhibits filed contemporaneously with that Motion, may be served by any means, including facsimile transmission, electronic mail or other electronic messaging, personal or overnight delivery, U.S. Mail or FedEx, by agents and employees of Plaintiff, by any law enforcement agency, or by private process server, upon any Contempt Defendant or any person (including any financial institution) that may have possession, custody or control of any Asset or Document of any

FTC App'x 0037

Contempt Defendant, or that may be subject to any provision of this Order pursuant to Rule 65(d)(2) of the Federal Rules of Civil Procedure. For purposes of this Section, service upon any branch, subsidiary, affiliate or office of any entity shall effect service upon the entire entity.

## X.   Correspondence and Service on Plaintiff

**It is further ordered** that, for the purpose of this Order, all correspondence and service of pleadings on Plaintiff shall be addressed to:

> Sarah Waldrop, counsel for Plaintiff Federal Trade Commission
> 600 Pennsylvania Ave. NW, Mailstop CC-9528
> Washington, DC 20580
> (202) 326-3444 (tel.)
> (202) 326-3197 (fax)
> swaldrop@ftc.gov

## XI.   Retention of Jurisdiction

**It is further ordered** that this Court shall retain jurisdiction of this matter for all purposes.

**Done and ordered** at Miami, Florida on August 18, 2021.

Robert N. Scola, Jr.
United States District Judge

**FTC App'x 0038**

# Attachment A

Consent to Release of Financial Records

I, _____of _____, (City, State), do hereby direct any bank, saving and loan association, credit union, depository institution, finance company, commercial lending company, credit card processor, credit card processing entity, automated clearing house, network transaction processor, bank debit processing entity, automated clearing house, network transaction processor, bank debit processing entity, brokerage house, escrow agent, money market or mutual fund, title company, commodity trading company, trustee, or person that holds, controls, or maintains custody of assets, wherever located, that are owned or controlled by me or at which there is an account of any kind upon which I am authorized to draw, and its officers, employees, and agents, to disclose all information and deliver copies of all documents of every nature in its possession or control which relate to the said accounts to any attorney of the Federal Trade Commission, and to give evidence relevant thereto, in the matter of *FTC v. Acquinity Interactive, LLC, et al.*, now pending in the United States District Court for the Southern District of Florida, and this shall be irrevocable authority for so doing.

This direction is intended to apply to the laws of countries other than the United States of America which restrict or prohibit disclosure of bank or other financial information without the consent of the holder of the account, and shall be construed as consent with respect hereto, and the same shall apply to any of the accounts for which I may be a relevant principal.

Dated:_____          Signature:_____

Printed Name:_____

**FTC App'x 0040**

# TAB AQ-DE.178-1



get fishing license - Google Se...

https://www.google.com/search?client=firefox-b-1-d&ei=qQ4VXczYIdLVtAb3q7PQCQ&q=get+fishing+license&oq=get+fishing+license&gs_l=psy-ab.3..0i67j0i7i30l2j0l2j0i7i30j0j0i7i30l3.9590.10916..1

Google

get fishing license

All · Maps · Shopping · News · Images · More · Settings · Tools · Sign in

About 168,000,000 results (0.49 seconds)

**Fishing Trips | Get Your License to Fish | Review Requirements**
Ad www.fishinglicense.org/Resource/Guide
Don't Get Fined and Go Fishing with a License! Learn How to Obtain Your Fishing License with Our Guide. Freshwater Fishing. What to Do. Fishing License Fees. Types of Licenses. Regulations Info. Eligibility Requirements. Saltwater Fishing. Fishing destinations. New or Renew License.

Renew Fishing License
Properly Renew Your Fishing License with Our Complete Guide.

Fishing License Process
Complete Details on Getting a Fishing License in Your State.

People also search for

| | |
|---|---|
| who sells fishing license near me | texas fishing license requirements |
| texas fishing license online | fishing license nj |
| fishing license ohio | fishing license pa |
| fishing license oklahoma | fishing license michigan |

**25% Off On All Quilts | Enter "4July" At Checkout | humpine.com**
Ad www.humpine.com/
This Promotion Is Ending Soon, Do Not Miss This Crazy Deal. 2 Days Express Shipping, 100% Money Back Guarantee.
Chrismas Quilts · Tree Of Life Quilts · Jelly Roll Quilts · Bohemian Quilts
Independence Day: 25% off All Quilts Blankets · Code 4JULY · Ends Jul 4

**Buying a fishing license | U.S. Fish and Wildlife Service**
https://www.fws.gov/fishing/FishingLicense.html
Feb 8, 2019 - First you'll need a fishing license! Buying a fishing license is quick, easy and directly contributes toward conservation efforts. In most states, licenses can be purchased online, by phone or at retail establishments.

**Purchase Hunting and Fishing Licenses Online - ReserveAmerica**
https://www.reserveamerica.com/outdoors/hunt-fish-license.htm
Alabama. Hunting license; Fishing license; Boat registration; Hunter education; Seasons and bag limits; Harvest reporting. Visit State Website Get Licenses ...

**Online License Sales and Service**

PX 1: Declaration of Lashanda Freeman
Attachment Z: Page 1



## Wisconsin Fishing Licenses

Many potential anglers are unsure where to get a fishing license in Wisconsin, or what licensing options are available to them. Fortunately, buying a recreational fishing license in the state is simple. Moreover, the Department of Natural Resources offers anglers low-cost first time licenses.

**Find Your Section:**

> How to Get a Fishing License in Wisconsin
> Types of Fishing Licenses in Wisconsin
> Wisconsin Fishing Laws & Regulations

### Start Fishing Hassle-Free



**Simplify the Fishing License Application Process**

Complete our simple form to purchase a fishing license guide.



**Download Your Detailed How-To Guide**

Our guide makes getting your fishing license fast and easy by detailing all the steps and requirements.



**Get Your Fishing License & Start Fishing!**

By following our informative guide, you'll be licensed and on the water in no time.

### How to Get a Fishing License in Wisconsin

Wisconsin fishing licenses can be purchased online, from Department of Natural Resources Service Centers or from a large number of DNR retail partners throughout the state. All applicants must prove residency during the application process to qualify for resident licenses. Anyone who cannot document residency must purchase a non-resident license.

Youth younger than 16 years of age are not required to hold recreational licenses to fish, and some non-resident family licenses cover certain youths that are 16 and 17 years of age. Non-resident short term licenses are also available to youth 16 or 17 years of age.

Resident seniors over 65 years of age may purchase discounted sportfishing licenses, but there are no free senior licenses available in the state. Wisconsin also does not offer lifetime licenses of any kind.

Commercial fishing licenses are available through the DNR. These licenses are not required or applicable except where fishermen intend to sell their catches for consumption or use by others. Commercial licenses are managed under separate rules than recreational licenses.

All applicants for licenses are required to provide government-issued IDs and their Social Security Numbers at the time of application.

> *Did you know! Wisconsin anglers can choose from many different types and durations of licenses*

### Types of Fishing Licenses in Wisconsin

Wisconsin offers numerous types of resident and non-resident fishing licenses. In addition to commercial and sportfishing licenses, the state offers short-term licenses, annual licenses, family licenses, spousal licenses and an array of specialty permits.

The state does not offer lifetime or multi-year licenses. All anglers must purchase new licenses no less than annually. Short term licenses range from one day to 15 days in length. Standard annual fishing licenses are valid for most species of fish and are valid from April 1 until March 31 of the following year.

**Note**: To fish for sturgeon, applicants must get special licenses that have location restrictions.

The DNR allows anglers who purchase short-term licenses to deduct the cost of those licenses from the cost of the annual licenses of their choice if they decide to upgrade later on within the same year. It also offers discounted annual licenses to first-time buyers.

For more information on the types of recreational fishing licenses available in Wisconsin, download our comprehensive guide.

### Wisconsin Fishing Laws & Regulations

Wisconsin fishing regulations cover a broad array of information relevant to anglers of all ages and inclinations. Topics include, but are not limited to:

> Licensing rules.
> Access to state- and privately-owned waterbodies.
> Minimum legal fish size.
> Fishing seasons.
> Bag limits.
> Gear restrictions.
> Legal use of nets.
> Taking bait (e.g. minnows).
> Preventing the spread of invasive aquatic species.

License applicants should make sure to review state fishing guidelines before taking to the water. These regulations can change from year to year, so applicants should not simply renew their credentials without verifying state fishing restrictions.

Find out everything you need to know about rules and regulations for fishing in Wisconsin by downloading our informative guide.

**FTC App'x 0043**

FISHINGLICENSE [org]    Money-Back Guarantee | Contact Us | About Us | Terms of Use | Privacy Policy | Site Map | Blog    info@fishinglicense.org

FishingLicense.org is a privately owned website that is not affiliated with any government agencies.



FISHINGLICENSE.ORG

State Info ∨    Resources ∨    Blogs    FAQs

FishingLicense.org is a privately-owned website that is not affiliated with any government agencies.

## Contact Us

FishingLicense.org is the No. 1 trusted Internet resource for all your fishing-related needs. Whether you're a new angler, or seasoned fisherman, we're here to provide tips, forms, and helpful information surrounding licensing and fishing services. On fishinglicense.org, you can search our State Info page and choose your current or future state of residence. With information on how to renew, replace and update your fishing license, along with forms and checklists, we've got everything covered.

Using our comprehensive fishing license guide, you can gain quick access to all the paperwork you need to obtain or replace a fishing license. We encourage you to get started with this process on fishinglicense.org so we can help you along the way as needed. Finally, if you get stuck along the way, please feel free to contact us. At fishinglicense.org, we're happy to assist. We've dedicated many hours to create this comprehensive resource to have at your fingertips, and we want to make sure you are a satisfied user. Thank you for trusting fishinglicense.org!

This site is privately owned and is neither operated by, nor affiliated with, any government agency. fishinglicense.org is operated by Orange Grove LLC.

Mail Address:
Orange Grove LLC
212 W. Ironwood Dr., Ste D, Bx 177
Coeur D'Alene, ID 83814
USA

Phone Support: 888-862-4836
Email Support: info@fishinglicense.org

If you'd like to speak to a member of our support team, you can reach us by phone or email from 7am to 12am EST - 7 days a week. Outside of normal business hours we offer email support only.

Money Back Guarantee | Contact Us | About Us | Terms of Use | Privacy Policy | Site Map | Blog    ✉ info@fishinglicense.org

FishingLicense.org is a privately-owned website that is not affiliated with any government agencies.

PX 1: Declaration of Lashanda Freeman
Attachment Z: Page 3



FTC App'x 0045





FTC App'x 0047

# TAB AQ-DE.178-26

FTC App'x 0048

**From:**    Karla Jinesta <karla.jinesta@bvmedia.cr>
**Sent:**    Mon, 30 Jul 2018 17:56:54 -0600
**Subject:**    Weekly Campaign Reports - 30 Jun to 29 July
**To:**    Burton Katz <bkatz@onpointglobal.com>, Brent Levison <blevison@onpointglobal.com>, "bbellack@onpointglobal.com" <bbellack@onpointglobal.com>
**Cc:**    Darryl Fernandes <darryl.fernandes@bvmedia.cr>, Helen Penaloza <hellen.penaloza@bvmedia.cr>, Gersom Bustos <gbustos@onpointglobal.com>, Daniela Quiroga <dquiroga@onpointglobal.com>, Gabriel Penaloza <gpenaloza@onpointglobal.com>, Lussich Juan Ignacio <jlussich@onpointglobal.com>, Victoria Lorido <vlorido@onpointglobal.com>

[Guides Reports.pptx](#)
[Services Reports.pptx](#)
[Utilization Report - Last 7 Days.xlsx](#)
[Disposition Report - Last 7 Days.xlsx](#)
[Uniques, Full Saves and Partial Refunds.xlsx](#)
[Agent Counts.png](#)

Hello Burton and Brent,

Please see attached reports for 30th June to 29th July.

Observations:
- Guides & Services – We still seeing abandons, with the new two classes we should have a better handle over them.
- Guides – Past Monday we were able to run the Email Retention Outbound Campaign in intervals.
- From the batch of 16 trainees that started on Monday 16th July, 12 graduated last 27th July and are live on production from today.
- From the batch of 14 trainees that started on Monday 23rd July, 12 started Nesting today.
- We are going to start a new batch of training on Monday 6th August.

Please let me know if you have any questions or comments.

Regards,



**Karla Jinesta S.**
*Supervisor*
**Phone:** [+506 2432-5907](#)
**Email:** [karla.jinesta@bvmedia.cr](#)
**Website:** [www.bvmedia.cr](#)

The information contained in this electronic message and any attachments (the "Message") is intended for one or more specific individuals or entities, and may be confidential, proprietary, privileged or otherwise protected by law. If you are not the intended recipient, please notify the sender immediately, delete this Message and do not disclose, distribute, or copy it to any third party or otherwise use this Message. Electronic messages are not secure or error free and can contain viruses or may be delayed, and the sender is not liable for any of these occurrences. The sender reserves the right to monitor, record, transfer cross border and retain electronic messages.

**FTC App'x 0049**

| DISPOSITION | Voice Count | Voice % | Email Count | Email % | Total Count | Total % |
|---|---|---|---|---|---|---|
| Abandon | 251 | 1.38% | | | 251 | 0.82% |
| Abuse Email | | | 22 | 0.18% | 22 | 0.07% |
| Agent Error | 11 | 0.06% | | | 11 | 0.04% |
| Already Refunded | 537 | 2.96% | 1411 | 11.44% | 1948 | 6.39% |
| Automated Response | | | 46 | 0.37% | 46 | 0.15% |
| Avoided Refund - Benefits | 64 | 0.35% | | | 64 | 0.21% |
| Avoided Refund - Ebook | 1681 | 9.26% | 4 | 0.03% | 1685 | 5.53% |
| Avoided Refund - Rewards | 247 | 1.36% | 1 | 0.01% | 248 | 0.81% |
| Bounced Email | | | 416 | 3.37% | 416 | 1.36% |
| Caller Disconnected | 526 | 2.90% | | | 526 | 1.73% |
| Caller Hung-up | 886 | 4.88% | | | 886 | 2.91% |
| Caller Hung-up - Full Refund | 229 | 1.26% | | | 229 | 0.75% |
| Clarify Charges | 267 | 1.47% | 86 | 0.70% | 353 | 1.16% |
| Confirmation Email | | | 798 | 6.47% | 798 | 2.62% |
| Customer Already Contacted | | | 368 | 2.98% | 368 | 1.21% |
| Customer Chose Email | 1 | 0.01% | | | 1 | 0.00% |
| DMV Question | 1222 | 6.73% | | | 1222 | 4.01% |
| Duplicate Email | | | 376 | 3.05% | 376 | 1.23% |
| Email Delivery Failure | | | 108 | 0.88% | 108 | 0.35% |
| Email Retention | | | 3686 | 29.89% | 3686 | 12.09% |
| Failed Transaction | | | 44 | 0.36% | 44 | 0.14% |
| Forced Logout | 1 | 0.01% | | | 1 | 0.00% |
| Full Refund | 3770 | 20.77% | 2859 | 23.18% | 6629 | 21.74% |
| FWCC Question | 92 | 0.51% | 6 | 0.05% | 98 | 0.32% |
| Gas Link Sent | | | 19 | 0.15% | 19 | 0.06% |
| Guide Re-Sent | 67 | 0.37% | 295 | 2.39% | 362 | 1.19% |
| Left Voicemail | 7 | 0.04% | | | 7 | 0.02% |
| Gas Link Sent | | | 28 | 0.23% | 28 | 0.09% |
| MADD Full Refund | 3 | 0.02% | 1 | 0.01% | 4 | 0.01% |
| Mailing Address - Check | | | 9 | 0.07% | 9 | 0.03% |
| No Contact | 311 | 1.71% | 16 | 0.13% | 327 | 1.07% |
| No Record | 334 | 1.84% | 208 | 1.69% | 542 | 1.78% |
| Other | 741 | 4.08% | 161 | 1.31% | 902 | 2.96% |
| Our Service | | | 1172 | 9.50% | 1172 | 3.84% |
| Outside Hours | 325 | 1.79% | | | 325 | 1.07% |
| Partial Refund | 6422 | 35.37% | | | 6422 | 21.06% |
| Request More Information | | | 2 | | 2 | 0.01% |
| Reward Re-Sent | 14 | | 31 | | 45 | 0.15% |
| Sent Easy Guide | 8 | 0.04% | | | 8 | 0.03% |
| Sent To Voicemail | 78 | 0.43% | | | 78 | 0.26% |
| Spam | | | 143 | | 143 | 0.47% |
| Test Call | 12 | 0.07% | | | 12 | 0.04% |
| Timeout | 1 | 0.01% | | | 1 | 0.00% |
| Transferred To 3rd Party | 3 | 0.02% | | | 3 | 0.01% |
| Unsubscribe Customer | | | 8 | 0.06% | 8 | 0.03% |
| USPS Question | 44 | 0.24% | 4 | 0.03% | 48 | 0.16% |
| USPS Update | | | 4 | 0.03% | 4 | 0.01% |
| TOTAL | 18155 | | 12332 | | 30487 | |
| Lowest | | 0.01% | | 0.01% | | 0.00% |
| Highest | | 35.37% | | 29.89% | | 21.74% |

FTC App'x 0050

| Disposition | Count | Percentage |
|---|---:|---:|
| Already Refunded | 51 | 14.57% |
| Answering Machine | 5 | 1.43% |
| Avoided Refund - Ebook | 7 | 2.00% |
| Busy | 2 | 0.57% |
| Caller Hung-up | 18 | 5.14% |
| Caller Hung-up - Full Refun | 3 | 0.86% |
| Clarify Charges | 1 | 0.29% |
| Customer Already Contact | 12 | 3.43% |
| DMV Question | 8 | 2.29% |
| Forced Logout | 1 | 0.29% |
| Full Refund | 14 | 4.00% |
| Left Voicemail | 92 | 26.29% |
| No Answer | 31 | 8.86% |
| No Contact | 67 | 19.14% |
| No Disposition | 2 | 0.57% |
| No Record | 8 | 2.29% |
| Other | 15 | 4.29% |
| Partial Refund | 12 | 3.43% |
| Test Call | 1 | 0.29% |
| Total | 350 | |
| Lowest | | 0.29% |
| Highest | | 26.29% |

FTC App'x 0051

| Row Labels | No Contact | Caller Hung-up - Full Refund | Full Refund | Partial Refund | Full Save | Clarify Charges | Already Refunded | Customer Already Contacted | DMV Question | Guide Re-Sent | No Record | Other | Reward Re-Sent | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| address-change.org | 7 | 1 | | 2 | | | 2 | | | | | | | 12 |
| addresschangeservice.org | 8 | | 3 | 1 | | | 3 | | | | | | | 15 |
| addresschangeservices.org | 1 | | | 2 | | | | | | | | | | 3 |
| alldriverslicense.com | 27 | 3 | 4 | 6 | 1 | | 3 | | | | | | | 44 |
| car-registration.org | 72 | 6 | 19 | 12 | 1 | | 11 | 2 | | | 1 | | | 124 |
| car-title.org | 16 | 1 | 2 | 1 | | | 3 | | | | | | | 23 |
| carregistration.org | 23 | 1 | 2 | 1 | | | 3 | | | | 1 | | | 31 |
| carregistrationadvisors.org | 45 | 2 | 7 | 8 | 3 | | 14 | 1 | | | 1 | 2 | | 83 |
| carregistrationassistance.org | 40 | 5 | 7 | 11 | | | 7 | | | | | | | 70 |
| carregistrationsimplified.org | 9 | | 2 | | 2 | | 3 | | | | | | | 16 |
| carregistrationsonline.com | 81 | 6 | 7 | 17 | 1 | | 10 | 2 | | | | | | 124 |
| change-my-address.org | | | | 1 | | | | | | | | | | 1 |
| changeaddressonline.org | 1 | | 1 | | | | | | | | | | | 2 |
| driverlicenseonline.org | 53 | 6 | 7 | 8 | 1 | | | | | 1 | | | | 78 |
| driverlicensesonline.org | 40 | 3 | 5 | 7 | | | 5 | | 1 | 1 | | 1 | | 63 |
| drivers-license-assistance.org | 29 | 1 | 1 | 6 | 3 | | 10 | | | | | | | 50 |
| drivers-license-services.org | 29 | 4 | 4 | 11 | | | 7 | 1 | | | | 1 | | 57 |
| drivers-licenses-online.org | 18 | 2 | 6 | 3 | | 1 | 4 | | | | | | | 34 |
| drivers-licenses.org | 50 | 6 | 13 | 10 | 2 | | 7 | 5 | | | | | | 93 |
| drivers-services.org | 76 | 8 | 5 | 25 | 3 | | 12 | 2 | | | | 1 | | 132 |
| driverslicenseadvisors.org | 28 | 4 | 4 | 8 | | | 1 | | | 1 | | | | 46 |
| driverslicenseassistance.org | 49 | 5 | 10 | 20 | | | 13 | 1 | | | | | | 98 |
| driverslicenseonline.org | 38 | 5 | 3 | 8 | 2 | | 6 | | 1 | 1 | | | | 64 |
| driverslicenses.org | 13 | 3 | 1 | 3 | | | 1 | | | | | | 1 | 22 |
| driverslicenseservices.org | 63 | 7 | 9 | 13 | 1 | | 15 | 2 | | 1 | | 1 | | 112 |
| driverslicensesonline.org | 20 | 1 | 6 | 9 | | | 4 | 1 | | | | | | 41 |
| driverservices.org | 65 | 4 | 12 | 11 | 1 | | 9 | | | | | 1 | | 103 |
| fishandgamelicenses.org | 1 | | | | | | | | | | | | | 1 |
| fishinglicense.org | 183 | 25 | 26 | 64 | 2 | | 33 | 3 | | | | 2 | | 338 |
| forwardmymail.org | 6 | 1 | 2 | 1 | | | 1 | 1 | | | | | | 13 |
| getcarregistration.org | 14 | | 3 | 3 | | | 4 | 1 | | | | | | 25 |
| getdrivers-license.org | 7 | | 1 | | 1 | | 2 | | | | | | | 11 |
| getdriverslicense.org | 61 | 2 | 3 | 6 | 2 | | 5 | 1 | | | | 1 | | 82 |
| getdriverslicenses.org | 24 | 3 | 1 | 4 | | | 3 | | | | | | | 35 |
| getvehicleregistration.org | 205 | 22 | 40 | 47 | 3 | 1 | 48 | 4 | | | | 3 | | 373 |
| getvehicleregistrations.org | 7 | 2 | 2 | 2 | | | 1 | | | | | | | 14 |
| GU - Inbound - Email Retention | 4 | | | | | | 8 | | | | | | | 12 |
| GUAU - Billing - Licenses | | | | | | | 1 | | | | | | | 2 |
| GUAU - Refund Line | | | | | | | 1 | | | | | | | 1 |
| movingaddresses.org | 1 | | | 1 | | | 4 | | | | | | | 6 |
| movingagent.org | 4 | | | 1 | | | 1 | | | | | | | 6 |
| my-drivers-license.org | 27 | | 4 | 4 | 3 | | 1 | | | | | | | 39 |
| myaddresschange.org | | | | | | | 1 | | | | | | | 1 |
| mycar-reg.org | 38 | 5 | 2 | 2 | 1 | | 6 | 1 | | | | | | 55 |
| mydriver-licenses.org | 162 | 12 | 24 | 53 | 3 | | 31 | 5 | | 1 | | 1 | | 292 |
| mydriverlicense.org | 87 | 7 | 9 | 27 | 1 | | 16 | 3 | | | 1 | 1 | | 152 |
| mydriverlicenses.org | 31 | | 2 | 8 | 1 | | 3 | | | | | | | 45 |
| mydriverservices.org | 25 | 2 | 3 | 10 | | 1 | 5 | 1 | | | | | | 47 |
| online-drivers-licenses.org | 129 | 5 | 16 | 33 | 6 | | 22 | 4 | | 1 | | 1 | | 217 |
| onlinechangeofaddress.org | 7 | | | | | | 3 | | | | | | | 10 |
| onlinedriverslicenses.org | 141 | 9 | 21 | 42 | 3 | | 27 | 3 | 1 | | | 4 | | 251 |
| postaladdresschange.org | | | | 4 | | | 2 | | | | | | | 10 |
| postaladdresschangeservices.or | 1 | | | | | | | | | | | | | 1 |
| postservicessimplified.org | 8 | | 1 | 1 | | | | | | | | | | 10 |
| updatemyaddress.org | 6 | 1 | 1 | 2 | | | 1 | | | | | | | 11 |
| Total | 2085 | 180 | 298 | 521 | 49 | 3 | 385 | 45 | 3 | 7 | 4 | 20 | 1 | 3601 |
| Percentage (All Calls) | 57.90% | 5.00% | 8.28% | 14.47% | 1.36% | 0.08% | 10.69% | 1.25% | 0.08% | 0.19% | 0.11% | 0.56% | 0.03% | 3601 |
| Percentage (Contacted) | | 11.87% | 19.66% | 34.37% | 3.23% | 0.20% | 25.40% | 2.97% | 0.20% | 0.46% | 0.26% | 1.32% | 0.07% | 1516  42.10% |
| Percentage (Retention Attempted) | | 16.30% | 26.99% | 47.19% | 4.44% | | | 4.08% | | 0.63% | | 1.81% | 0.09% | 1104  30.66% |

# TAB AQ-DE.178-34

FTC App'x 0053

# BakerHostetler

Baker&Hostetler LLP

45 Rockefeller Plaza
New York, NY 10111

T 212.589.4200
F 212.589.4201
www.bakerlaw.com

Linda A. Goldstein
direct dial: 212.589.4206
lgoldstein@bakerlaw.com

April 16, 2021

**VIA E-MAIL (SCHAUDHRY@FTC.GOV)**

Sana Chaudhry
Federal Trade Commission
Washington, D.C. 20580

*Re:*     *FTC v. Acquinity Interactive, LLC, Case No. 16-cv-60166 (S.D. Fla.)*
        *FTC Matter No. X1223161*

Dear Ms. Chaudhry:

        In compliance with the requirements of the Stipulated Final Judgment and Order for
Permanent Injunction and Other Equitable Relief as to Burton Katz and Jonathan Smyth
("Order"), below are Mr. Katz's responses to the demands contained in your letter dated April 2,
2021.

        Neither the fact that Mr. Katz has answered the FTC's demand for information and
documents, nor the answers themselves, constitute an admission or acknowledgment that the
demand for information and documents are true or accurate, that the information sought is within
the proper bounds of the Order, or that other demands for information and documents will be
treated in a similar fashion.  To the extent any answer to a specific demand is provided
notwithstanding any objection, such answer is subject to and without waiver of such objections.
Such response should not be considered a waiver of any objection and is provided in good faith.

    1.  Identify all of Your communications with each Covered Individual, or anyone acting on
        his or her behalf, relating to the Order, including each communication's date, method,
        and participating individuals.

        Response:

        To the extent this demand seeks the identification of communications protected by the
attorney-client privilege, Mr. Katz objects to the request and will not identify those

*Atlanta     Chicago     Cincinnati     Cleveland     Columbus     Costa Mesa     Dallas     Denver     Houston*
*Los Angeles     New York     Orlando     Philadelphia     San Francisco     Seattle     Washington, DC*

**FTC App'x 0054**

**PX45: Page 1**

April 16, 2021
Page 2

protected communications.  Mr. Katz further objects to this demand as overbroad, vague and ambiguous.  Notwithstanding and without waiving the foregoing, Mr. Katz has identified the following communications with Covered Individuals responsive to this request:

- <u>Brent Levison</u>: To the best of Mr. Katz's recollection, Mr. Katz had at least one verbal communication with Mr. Levison at or around the time of the entry of the Order regarding the substance of the Order and/or the settlement of the case. Additionally, email communications regarding the Order were exchanged between Mr. Levison and Mr. Katz on April 23, 2014; May 15, 2014; August 12, 2014; and February 9-10, 2016.
- <u>Elisha Rothman</u>: To the best of Mr. Katz's recollection, Mr. Katz had at least one verbal communication with Mr. Rothman regarding the substance of the Order and/or settlement of the case at or around the time Mr. Rothman purchased an ownership interest in Cambridge Media LLC.
- <u>Christopher Sherman</u>: To the best of Mr. Katz's recollection, Mr. Katz had at least one verbal communication with Mr. Sherman at or around the time of the entry of the Order regarding the substance of the Order and/or settlement of the case.
- <u>Arlene Mahon</u>: To the best of Mr. Katz's recollection, Mr. Katz had at least one verbal communication with Ms. Mahon regarding the substance of the Order and/or settlement of the case at or around the time the Order was entered. Additionally, email communications regarding the Order were exchanged between Ms. Mahon and Mr. Katz on April 23, 2014; May 15, 2014; August 12, 2014; and December 17, 2015.
- <u>Robert Zangrillo</u>: To the best of Mr. Katz's recollection, Mr. Katz had at least one verbal communication with Mr. Zangrillo regarding settlement of a civil action at or around the time they closed on a transaction relating to DG DMV LLC. Mr. Katz does not recall discussing the existence of the Order with Mr. Zangrillo.

2. Identify each individual or entity to which You delivered a copy of the Order pursuant to Section VII ("Order Acknowledgments") of the Order, including the date and method of delivery for each individual or entity.

   <u>Response:</u>

   Since entry of the Order, Mr. Katz has not been a majority owner of, nor has he controlled, any business with principals, officers, directors, or LLC managers or members other than himself, and therefore was not required to deliver the Order to any of the individuals or entities identified in Section VII of the Order. Accordingly, Mr. Katz states that he has not provided the Order to any entity or individual pursuant to Section VII of the Order.

3. Produce a copy of each written communication you identified in response to Request 1.

**FTC App'x 0055**

April 16, 2021
Page 3

<u>Response:</u>

To the extent this demand seeks the production of communications protected by the
attorney-client privilege, Mr. Katz objects to the demand and will not provide protected
communications.  Mr. Katz further objects to this demand as overbroad, vague, and
ambiguous.  Notwithstanding and without waiving the foregoing, Mr. Katz will produce
responsive communications.

4.   Produce a copy of each Order acknowledgment You obtained pursuant to Section VII.C
of the Order.

<u>Response:</u>

Since entry of the Order, Mr. Katz has not been a majority owner of, nor has he
controlled, any business with principals, officers, directors, or LLC managers or members
other than himself, and therefore was not required to obtain an acknowledgment from any
of the individuals or entities identified in Section VII.C of the Order. Accordingly, Mr.
Katz states that he is not possession, custody, or control of any document responsive to
this request.

5.   Produce each record You created and/or retained pursuant to Section IX of the Order.

<u>Response:</u>

Mr. Katz states that, pursuant to the Court's Order Granting Motion for Preliminary
Injunction (Dkt. 126), entered January 14, 2020 in *FTC v. On Point Global LLC, et al.*,
1:19-cv-25046 (S.D. Fla.), records created and/or retained pursuant to Section IX of the
Order, including records pertaining to On Point Global LLC, Issue Based Media LLC,
and Falcon Media LLC are necessarily in the exclusive custody and control of the
Receiver appointed in that matter. As such, Mr. Katz directs the FTC to the appointed
receiver in *FTC v. On Point Global LLC, et al.*, 1:19-cv-25046 (S.D. Fla.).

Additionally, Issue Based Media LLC and Falcon Media LLC are not operating entities
and therefore records pertaining to (i) accounting record showing revenues from all goods
or services sold; (ii) personnel records; (iii) consumer complaints; and (iii) all records of
any consumer's authorization to be billed or charged for goods or services do not exist.

Mr. Katz also notes that pursuant to Section IX of the Order, he is only required to retain
certain records for five years from the date in which the records were created. Thus,
many of the records requested fall outside of the five-year retention requirement.

Attached is a declaration from Mr. Katz stating that under penalty of perjury the foregoing is
true. Please contact me with any questions regarding Mr. Katz's response to the FTC's demand.

**FTC App'x 0056**

April 16, 2021
Page 4


Sincerely,



Linda A. Goldstein
Partner


cc:      Associate Director of Enforcement via Email: DEbrief@ftc.gov

**FTC App'x 0057**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

---

FEDERAL TRADE COMMISSION,

    Plaintiff,

    v.

ACQUINITY INTERACTIVE, LLC, et al.,

    Defendants.

---

Case No. 14-60166-CIV-SCOLA/OTAZO-REYES

### <u>DECLARATION OF BURTON KATZ</u>

    BURTON KATZ, pursuant to 28 U.S.C. § 1746, declares the following under penalty of perjury:

    1.    On August 14, 2014, I entered into a Stipulated Final Judgment and Order For Permanent Injunction and Other Equitable Relief with the Federal Trade Commission (the "Order").

    2.    Pursuant to Section X of the Order, the Federal Trade Commission, via letter dated April 2, 2021 to my attorney Linda Goldstein, requested certain information and documents.

    3.    I have examined Ms. Goldstein's letter in response to the Federal Trade Commission's April 2, 2021 requests and represent that the foregoing is true and accurate and to the best of my recollection.

Executed:    April 16, 2021
           Miami, Florida

                                     *burton katz*
                                     Burton Katz

**FTC App'x 0058**

| | |
|---|---|
| **From:** | Mark Raymond |
| **To:** | "Brent Levison"; "Burton Katz" |
| **Subject:** | Broad and Cassel |
| **Date:** | Tuesday, February 9, 2016 2:26:59 PM |
| **Attachments:** | image001.jpg |
| | Acquinity Matter.pdf |
| | Registertovote.com Matter.pdf |
| | 973632.doc |
| | 975751.doc |
| | 984035.doc |

Burton and Brent,

I hope the year is starting out well for you both.

As a follow-up to my email below, while we received payment on invoice nos. 971016 and 953009, the invoices related to the registertovote.com and Acquinity matters, however, remain outstanding. I am attaching those invoices again for your convenience.  I am also attaching outstanding invoices related to the operating agreement work done by  John Haley.

Would you please immediately attend to the payment of these invoices.  I would greatly appreciate same.

Thanks,
Mark

**From:** Mark Raymond
**Sent:** Friday, December 11, 2015 1:24 PM
**To:** 'Brent Levison'; 'Burton Katz'
**Cc:** Erin K. Kolmansberger
**Subject:** RE: RE: Broad and Cassel

Brent & Burton,

I hope you both are well and having a wonderful Hanukah with your families.

As you are aware, Rhett is still out on disability due to his back.  I did, however, speak with him about your email.  Rhett tells me that Andrew Resnick is/was one of your partners and that Broad and Cassel did work for Andrew related to registertovote.com.  Rhett did not ask for a retainer for this work because it was for one of your group. Although we could not reverse Google's decision, we did work to try.  No one voiced any dissatisfaction at the time.  Andrew's balance of $4,715, however, remains outstanding.   See invoice attached as "Registertovote.com Matter." It is distressing that all bills for work for all of the group are outstanding.

In addition, Erin provided you with the attached invoices for the "Licenses.org matter" (totaling $1,720.53) and the "General Matter" (totaling $3,092, which excludes the prior balance of $4,715 related to the registertovote.com matter).  These amounts also remain unpaid.  And, the invoice for the FTC matter totaling $29,387.40 has not been paid.  A copy of that invoice is attached as "Acquinity Matter" and was provided to Burton and Jonathan by separate email.

**FTC App'x 0059**

KATZ000004

Based on the above, approximately $38,915 remains outstanding, representing:

| | |
|---|---|
| Unpaid balance related to the Registertovote.com Matter | $ 4,715.00 |
| Unpaid balance related to the Licenses.org Matter | $ 1,720.53 |
| Unpaid balance related to the General Matter | |
| (excluding prior balance related to Registertovote.com Matter) | $ 3,092.00 |
| Unpaid balance related to the Acquinity Matter | $29,387.40 |
| | $38,914.93 |

I must ask your team to immediately attend to the payment of these invoices.  As you know year-end is rapidly approaching and we need to bring these monies in.

Please let me hear from you.

Many thanks
Mark

Attachments

**From:** Brent Levison [mailto:brentlevison@gmail.com]
**Sent:** Monday, November 30, 2015 11:16 AM
**To:** Erin K. Kolmansberger
**Cc:** Burton Katz; Mark Raymond
**Subject:** Re: RE: Broad and Cassel

Erin,

I apologize for the delayed response and the current situation.   As I indicated to Rhett at the time this matter was being generated - this matter was being engaged by Andrew Resnick and he would be the the contact person for this matter.

I just spoke to Andrew and he feels if Rhett wants to call him to discuss the bill then please have him do so as he is pretty adamant that the services rendered didn't equate to the amount being billed and even more there were zero results and lots of inaccurate/ bad advice regarding this matter.

I hate to be the bearer of bad news but I prefer responding rather than leaving this issue without a response.

All the best,

Brent

On Tue, Nov 24, 2015 at 9:37 AM, Erin K. Kolmansberger
<ekolmansberger@broadandcassel.com> wrote:
Brent and Burton,

**FTC App'x 0060**

KATZ000005

As you know, our Firm's fiscal year is coming to a close and I am now under extreme pressure to bring all outstanding invoices current.

I must ask that your team please attend to the attached invoices as soon as possible.  Also, the invoice relating to work on registertovote.com totaling $4,715 was forwarded to Andrew Resnick per Brent's instruction and remains unpaid.

Our Firm's bank wire instructions are as follows:

Sabadell United
44 W. Flagler Street
Miami, FL 33130
ABA #067009646

FOR THE ACCOUNT OF:
Broad and Cassel Operating Account
Account # ███████7219

Thank you in advance for your prompt cooperation.

Best,
Erin


**From:** Erin K. Kolmansberger
**Sent:** Wednesday, October 28, 2015 2:26 PM
**To:** 'brentlevison@gmail.com'
**Cc:** Mark Raymond
**Subject:** RE: Broad and Cassel

Brent,

I am following up on the attached invoices.  We have not been focused on following up on these as Rhett is still out.  Please note that I forwarded the October 2014 invoice for the general matter (relating to work on registertovote.com totaling $4,715) to Andrew Resnick per your instruction.  The attached invoices, however, remain outstanding.

We would appreciate your putting these in line for payment this week.  Please advise.

Thanks,
Erin



| Home | Bio | VCard |

**Erin Kolmansberger, Esq.**
2 South Biscayne Blvd.
21st Floor
Miami, FL 33131
Telephone: 305.373.9400
Facsimile: 305.373.9443
Direct Line: (305) 373-9448
Direct Facsimile: (305) 995-6395

**FTC App'x 0061**

E-MAIL: EKOLMANSBERGER@BROADANDCASSEL.COM

[www.broadandcassel.com](http://www.broadandcassel.com)

Please be aware this e-mail is confidential, and may be privileged under Florida law. The contents are intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you are not the intended recipient, please delete the e-mail without reading it, and reply to us that you received the communication in error so that we may correct our records. Thank you.

--
find a cause to die for - and then live for it!
    Marc B. Levison

CONFIDENTIALITY NOTICE: This electronic mail message and any attachment are confidential and may also contain privileged attorney-client information or work product. The message is intended only for the use of the addressee. If you are not the intended recipient, or the person responsible to deliver it to the intended recipient, you may not use, distribute, or copy this communication. If you have received the message in error, please immediately notify me by reply electronic mail and delete this original message.

Please be aware this e-mail is confidential, and may be privileged under Florida law. The contents are intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you are not the intended recipient, please delete the e-mail without reading it, and reply to us that you received the communication in error so that we may correct our records. Thank you.

**FTC App'x 0062**

KATZ000007



<div align="right">One Biscayne Tower<br>21st Floor<br>2 South Biscayne Boulevard<br>Miami, Florida  33131<br>Telephone: 305.373.9400<br>Facsimile: 305.373.9443<br>www.broadandcassel.com<br>**Federal Tax Id: 59-0630785**</div>

Burton Katz and Jonathan Smyth                     May 30, 2015
c/o Arlene Mahon                                   Invoice No.:  971020

## STATEMENT OF ACCOUNT

Matter Name:    FTC v. Acquinity
Client/Matter No:  46060.0003
Billing Attorney:  Rhett Traband, PA

| | | |
|---|---|---|
| Previous Balance | | $26,187.40 |
| Payments Received | | |
| Subtotal of Previous Balance | | $26,187.40 |
| Professional Charges (detail attached) | $3,200.00 | |
| Expenses (detail attached) | 0.00 | |
| Subtotal of Current Charges | | $3,200.00 |
| **TOTAL BALANCE DUE (Previous and current balance)** | | **$29,387.40** |

PAYMENT DUE UPON RECEIPT

TO ENSURE PROPER CREDIT, PLEASE RETURN REMITTANCE PAGE WITH YOUR
PAYMENT

FTC App'x 0063

FORT LAUDERDALE • FORT MYERS • TALLAHASSEE • FT. LAUDERDALE • JACKSONVILLE • MIAMI • ORLANDO • TALLAHASSEE • TAMPA • WEST PALM BEACH

KATZ000008

# BROAD AND CASSEL
ATTORNEYS AT LAW

Re: Burton Katz and Jonathan Smyth                                    Page 2
    FTC v. Acquinity
    46060.0003

## ITEMIZED PROFESSIONAL CHARGES

| | | | | |
|---|---|---|---|---|
| 02/03/2014 | R-T | Teleconference with Steve Wernikoff, follow up call with Jono. | 0.20 | $80.00 |
| 02/04/2014 | R-T | Teleconference with Burton and Jono (2 times), teleconference with Hatton, draft and exchange emails, review subpoena list. | 1.30 | $520.00 |
| 02/05/2014 | R-T | Teleconference with Burton, Jono, Steve Wernikoff, David Hatton, Draft and exchange emails regarding documents. | 1.30 | $520.00 |
| 02/07/2014 | R-T | Draft and exchange emails with Jono regarding documents to be produced to the FTC. | 0.40 | $160.00 |
| 02/11/2014 | R-T | Teleconference with Jono, draft email response to Hatton, draft response to FTC Counsel. | 1.10 | $440.00 |
| 02/12/2014 | R-T | Review emails from Wernikoff, draft and exchange scheduling emails. | 0.50 | $200.00 |
| 02/12/2014 | R-T | Review survey initial results. | 0.20 | $80.00 |
| 02/13/2014 | R-T | Teleconferences with Brent, Carl Linder, David Hatton & Richard Epstein. | 1.40 | $560.00 |
| 02/14/2014 | R-T | Teleconference with survey experts and Brent. | 0.30 | $120.00 |
| 02/18/2014 | R-T | Draft and exchange emails with FTC. | 0.20 | $80.00 |
| 02/20/2014 | R-T | Teleconference with Steve Wernikoff. | 0.20 | $80.00 |
| 02/21/2014 | R-T | Teleconference with Burton regarding meeting the FTC and document production. | 0.20 | $80.00 |
| 02/27/2014 | R-T | Draft and exchange emails with Burton and Wernikoff regarding meeting, teleconferences with Jono regarding documents. | 0.60 | $240.00 |
| 02/28/2014 | R-T | Draft and exchange emails concerning FTC meeting. | 0.10 | $40.00 |

**TOTAL PROFESSIONAL CHARGES** ........................... **$3,200.00**

## TIMEKEEPER SUMMARY

R-T       Rhett Traband, PA

BOCA RATON • DAYTONA • FT. LAUDERDALE • JACKSONVILLE • MIAMI • ORLANDO • TALLAHASSEE • TAMPA • WEST PALM BEACH

**FTC App'x 0064**



**BROAD AND CASSEL**
ATTORNEYS AT LAW

One Biscayne Tower
21st Floor
2 South Biscayne Boulevard
Miami, Florida 33131
Telephone: 305.373.9400
Facsimile: 305.373.9443
www.broadandcassel.com
Federal Tax Id: 59-0630785

Burton Katz and Jonathan Smyth
c/o Arlene Mahon

May 30, 2015
Invoice No.:  971020

Matter Name:   FTC v. Acquinity
Client/Matter No:  46060.0003
Billing Attorney:  Rhett Traband, PA

| | |
|---|---|
| Previous Balance | $26,187.40 |
| Payments Received | |
| Subtotal of Previous Balance | $26,187.40 |
| Professional Charges | $3,200.00 |
| Expenses | 0.00 |
| Subtotal of Current Charges | $3,200.00 |
| **TOTAL BALANCE DUE (Previous and current balance)** | **$29,387.40** |

PAYMENT DUE UPON RECEIPT

TO ENSURE PROPER CREDIT, PLEASE RETURN REMITTANCE
PAGE WITH YOUR PAYMENT

FORT LAUDERDALE • JACKSONVILLE • MIAMI • ORLANDO • TALLAHASSEE • TAMPA • WEST PALM BEACH

ATTACHMENT ENTITLED

Registertovote.com Matter

IS NOT RESPONSIVE

FTC App'x 0066

KATZ000011



One Biscayne Tower
21st Floor
2 South Biscayne Boulevard
Miami, Florida  33131
Telephone: 305 373 9400
Facsimile: 305 373 9443
www.broadandcassel.com
**Federal Tax Id: 59-0630785**

Burton Katz                                                     June 15, 2015
235 Lincoln Road                                      Invoice No.:  973632
Suite 400
Miami Beach, FL 33139

## STATEMENT OF ACCOUNT

Matter Name:   Advice regarding Operating agreement
Client/Matter No:  51097.0001
Billing Attorney:  John F. Haley

| | | |
|---|---|---|
| Previous Balance | | $0.00 |
| Payments Received | | |
| Subtotal of Previous Balance | | $0.00 |
| Professional Charges (detail attached) | $3,047.50 | |
| Expenses (detail attached) | 0.00 | |
| Subtotal of Current Charges | | $3,047.50 |
| **TOTAL BALANCE DUE (Previous and current balance)** | | **$3,047.50** |

PAYMENT DUE UPON RECEIPT

TO ENSURE PROPER CREDIT, PLEASE RETURN REMITTANCE PAGE WITH YOUR PAYMENT

**FTC App'x 0067**

BOCA RATON • DESTIN • FT LAUDERDALE • JACKSONVILLE • MIAMI • ORLANDO • TALLAHASSEE • TAMPA • WEST PALM BEACH

# BROAD AND CASSEL
## ATTORNEYS AT LAW

Re: Burton Katz                                                              Page 2
Advice regarding Operating agreement
51097.0001

## ITEMIZED PROFESSIONAL CHARGES

| 05/20/2015 | JFH | Conference with Burton Katz to discuss Operating Agreement structure and terms; Attention to Operating Agreement. | 1.10 | $632.50 |
|---|---|---|---|---|
| 05/27/2015 | JFH | Attention to Operating Agreement. | 1.30 | $747.50 |
| 05/29/2015 | JFH | Attend meeting with Burton Katz; review Operating Agreement in preparation for meeting with Burton Katz. | 2.90 | $1,667.50 |

**TOTAL PROFESSIONAL CHARGES** ........................... **$3,047.50**

## TIMEKEEPER SUMMARY

JFH        John F. Haley



**BROAD AND CASSEL**

A T T O R N E Y S   A T   L A W

One Biscayne Tower
21ˢᵗ Floor
2 South Biscayne Boulevard
Miami, Florida  33131
Telephone: 305 373 9400
Facsimile: 305 373 9443
www.broadandcassel.com
**Federal Tax Id: 59-0630785**

Burton Katz                                                    June 15, 2015
235 Lincoln Road
Suite 400                                            Invoice No.:   973632
Miami Beach, FL 33139


Matter Name:   Advice regarding Operating agreement
Client/Matter No: 51097.0001
Billing Attorney:  John F. Haley


| | |
|---|---:|
| Previous Balance | $0.00 |
| Payments Received | |
|    Subtotal of Previous Balance | $0.00 |
| Professional Charges | $3,047.50 |
| Expenses | 0.00 |
|    Subtotal of Current Charges | $3,047.50 |
| **TOTAL BALANCE DUE (Previous and current balance)** | **$3,047.50** |


PAYMENT DUE UPON RECEIPT

TO ENSURE PROPER CREDIT, PLEASE RETURN REMITTANCE
PAGE WITH YOUR PAYMENT

**FTC App'x 0069**

BOCA RATON • DESTIN • FT LAUDERDALE • JACKSONVILLE • MIAMI • ORLANDO • TALLAHASSEE • TAMPA • WEST PALM BEACH



One Biscayne Tower
21st Floor
2 South Biscayne Boulevard
Miami, Florida  33131
Telephone: 305 373 9400
Facsimile: 305 373 9443
www.broadandcassel.com
**Federal Tax Id: 59-0630785**

Burton Katz                                              July 10, 2015
235 Lincoln Road                                  Invoice No.:  975751
Suite 400
Miami Beach, FL 33139

## STATEMENT OF ACCOUNT

Matter Name:   Advice regarding Operating agreement
Client/Matter No:  51097.0001
Billing Attorney:  John F. Haley

| | | |
|---|---|---|
| Previous Balance | | $3,047.50 |
| Payments Received | | |
| Subtotal of Previous Balance | | $3,047.50 |
| Professional Charges (detail attached) | $2,317.50 | |
| Expenses (detail attached) | 0.00 | |
| Subtotal of Current Charges | | $2,317.50 |
| **TOTAL BALANCE DUE (Previous and current balance)** | | **$5,365.00** |

PAYMENT DUE UPON RECEIPT

TO ENSURE PROPER CREDIT, PLEASE RETURN REMITTANCE PAGE WITH YOUR
PAYMENT

**FTC App'x 0070**

BOCA RATON • DESTIN • FT LAUDERDALE • JACKSONVILLE • MIAMI • ORLANDO • TALLAHASSEE • TAMPA • WEST PALM BEACH

KATZ000015

# BROAD AND CASSEL
### ATTORNEYS AT LAW

Re: Burton Katz                                                      Page 2
  Advice regarding Operating agreement
  51097.0001

## ITEMIZED PROFESSIONAL CHARGES

| | | | | |
|---|---|---|---|---|
| 06/02/2015 | JFH | Attention to Operating Agreement; Conference with Y. Markova regarding same. | 1.60 | $920.00 |
| 06/02/2015 | Y-M | Meeting with J. Haley; review and revise Amended and Restated LLC Agreement of DG DMV LLC. | 1.60 | $400.00 |
| 06/11/2015 | CEL | Conference with JH regarding Security Agreement. | 0.10 | $60.00 |
| 06/11/2015 | JFH | Attention to Note and Security Agreement and prepare comments to same. | 1.50 | $862.50 |
| 06/11/2015 | Y-M | Meeting with J. Haley; review and revise Secured Promissory Note and Pledge security Agreement. | 0.30 | $75.00 |

**TOTAL PROFESSIONAL CHARGES** ...........................  **$2,317.50**

## TIMEKEEPER SUMMARY

JFH    John F. Haley
CEL    Carlos E. Loumiet
Y-M    Yulia Markova

**FTC App'x 0071**

BOCA RATON • DESTIN • FT LAUDERDALE • JACKSONVILLE • MIAMI • ORLANDO • TALLAHASSEE • TAMPA • WEST PALM BEACH

KATZ000016



**BROAD AND CASSEL**
ATTORNEYS AT LAW

One Biscayne Tower
21ˢᵗ Floor
2 South Biscayne Boulevard
Miami, Florida 33131
Telephone: 305 373 9400
Facsimile: 305 373 9443
www.broadandcassel.com
**Federal Tax Id: 59-0630785**

Burton Katz
235 Lincoln Road
Suite 400
Miami Beach, FL 33139

July 10, 2015

Invoice No.:  975751

Matter Name:  Advice regarding Operating agreement
Client/Matter No: 51097.0001
Billing Attorney:  John F. Haley

| | |
|---|---|
| Previous Balance | $3,047.50 |
| Payments Received | |
| Subtotal of Previous Balance | $3,047.50 |
| Professional Charges | $2,317.50 |
| Expenses | 0.00 |
| Subtotal of Current Charges | $2,317.50 |
| **TOTAL BALANCE DUE (Previous and current balance)** | **$5,365.00** |

PAYMENT DUE UPON RECEIPT

TO ENSURE PROPER CREDIT, PLEASE RETURN REMITTANCE
PAGE WITH YOUR PAYMENT

**FTC App'x 0072**
BOCA RATON • DESTIN • FT LAUDERDALE • JACKSONVILLE • MIAMI • ORLANDO • TALLAHASSEE • TAMPA • WEST PALM BEACH

KATZ000017



One Biscayne Tower
21st Floor
2 South Biscayne Boulevard
Miami, Florida 33131
Telephone: 305 373 9400
Facsimile: 305 373 9443
www.broadandcassel.com
**Federal Tax Id: 59-0630785**

Burton Katz
235 Lincoln Road
Suite 400
Miami Beach, FL 33139

October 15, 2015
Invoice No.:  984035

## STATEMENT OF ACCOUNT

Matter Name:   Advice regarding Operating agreement
Client/Matter No:  51097.0001
Billing Attorney:  John F. Haley

| | | |
|---|---|---|
| Previous Balance | | $5,365.00 |
| Payments Received | | |
| Subtotal of Previous Balance | | $5,365.00 |
| Professional Charges (detail attached) | $756.00 | |
| Expenses (detail attached) | 0.00 | |
| Subtotal of Current Charges | | $756.00 |
| **TOTAL BALANCE DUE (Previous and current balance)** | | **$6,121.00** |

PAYMENT DUE UPON RECEIPT

TO ENSURE PROPER CREDIT, PLEASE RETURN REMITTANCE PAGE WITH YOUR PAYMENT

**FTC App'x 0073**

BOCA RATON • DESTIN • FT LAUDERDALE • JACKSONVILLE • MIAMI • ORLANDO • TALLAHASSEE • TAMPA • WEST PALM BEACH

KATZ000018

# BROAD AND CASSEL
ATTORNEYS AT LAW

Re: Burton Katz                                                              Page 2
    Advice regarding Operating agreement
    51097.0001

## ITEMIZED PROFESSIONAL CHARGES

| 08/21/2015 | S-P | Draft Non-Compete Agreement between Restricted Parties and Client. | 0.60 | $168.00 |
|---|---|---|---|---|
| 08/24/2015 | S-P | Revise Non-Compete Agreement between Restricted Parties and Client. | 2.10 | $588.00 |

**TOTAL PROFESSIONAL CHARGES** ..........................  **$756.00**

## TIMEKEEPER SUMMARY

S-P       Sylvia C. Perez



One Biscayne Tower
21ˢᵗ Floor
2 South Biscayne Boulevard
Miami, Florida  33131
Telephone: 305 373 9400
Facsimile: 305 373 9443
www.broadandcassel.com
**Federal Tax Id: 59-0630785**

Burton Katz
235 Lincoln Road
Suite 400
Miami Beach, FL 33139

October 15, 2015

Invoice No.:  984035

Matter Name:   Advice regarding Operating agreement
Client/Matter No: 51097.0001
Billing Attorney:  John F. Haley

| | |
|---|---:|
| Previous Balance | $5,365.00 |
| Payments Received | |
| Subtotal of Previous Balance | $5,365.00 |
| Professional Charges | $756.00 |
| Expenses | 0.00 |
| Subtotal of Current Charges | $756.00 |
| **TOTAL BALANCE DUE (Previous and current balance)** | **$6,121.00** |

PAYMENT DUE UPON RECEIPT

TO ENSURE PROPER CREDIT, PLEASE RETURN REMITTANCE
PAGE WITH YOUR PAYMENT

**FTC App'x 0075**
Boca Raton • Destin • Ft Lauderdale • Jacksonville • Miami • Orlando • Tallahassee • Tampa • West Palm Beach

KATZ000020

# TAB AQ-
# DE.178-46

```
 1                 UNITED STATES DISTRICT COURT

 2                 SOUTHERN DISTRICT OF FLORIDA

 3

 4   FEDERAL TRADE COMMISSION,        )

 5          Plaintiff,                )

 6      vs.                           )  Case No.

 7   ON POINT GLOBAL, LLC, et al.,    )  19-CV-25046-Scola

 8          Defendants.               )

 9

10

11                           Friday, March 12, 2021

12

13                           Via Zoom videoconference

14

15

16            The above-entitled matter came on for

17   deposition, pursuant to notice, at 8:30 a.m., for the

18   testimony of:

19

20                  BRENT LEVISON

21

22

23

24   Reported by:  Deborah Wehr, RPR

25
```

**FTC App'x 0077**

236

Levison

FTC v. On Point Global, et al.                                3/12/2021

```
 1        Q.  Are you familiar with a company called
 2    Acquinity Interactive?
 3        A.  I'm familiar with Acquinity Interactive, yes.
 4        Q.  What is Acquinity Interactive?
 5        A.  I have no idea what they are or what they did
 6    or if they are still around, but I know the name.
 7        Q.  And how do you know the name?
 8        A.  I was made aware from Burton of an issue he had
 9    with a business that he was no longer running or was
10    even possible to operate.  So he made me aware of his
11    prior litigation issue with Acquinity.
12        Q.  And can you be more specific?  When you say
13    prior litigation, which litigation are you referring
14    to?
15            MR. DONAHO:  Object to form.  Outside the scope
16    of discovery.
17            You can answer this one, Mr. Levison.
18            THE WITNESS:  Thank you.  The only issue I'm
19    aware of is where there was FTC/Acquinity matter.  And
20    that's what I was aware of.
21            BY MS. CHAUDHRY:
22        Q.  When did you become aware of that?
23            MR. DONAHO:  Object to form.  Objection.
24    Outside the scope of discovery.
25            THE WITNESS:  Burton made me aware after -- I
```

For The Record, Inc.

(301) 870-8025 - www.ftrinc.net - (800) 921-5555

**FTC App'x 0078**

237

Levison

FTC v. On Point Global, et al.                              3/12/2021

1    mean, I was friendly with him, after the issue.  After,

2    I guess it was resolved, he made me very aware of it.

3           BY MS. CHAUDHRY:

4        Q.  What year was that?  Was that 2014?

5           MR. DONAHO:  Object to form.  Outside the scope

6    of discovery.

7           THE WITNESS:  I don't recall exactly when.

8           BY MS. CHAUDHRY:

9        Q.  Was it shortly after the issue was resolved?

10          MR. DONAHO:  Object to form.  Asked and

11   answered.  Outside the scope of discovery.

12          THE WITNESS:  Yes, it was.

13          BY MS. CHAUDHRY:

14       Q.  And you are aware that the FTC filed a lawsuit

15   against Mr. Katz?

16          MR. DONAHO:  Object to form.  Vague and

17   ambiguous.

18          THE WITNESS:  I don't have the document in

19   front of me, but what I believe and what I recollect is

20   that the FTC filed litigation against Acquinity, and at

21   the very end I believe there was an issue with Burton

22   Katz which got settled.

23          BY MS. CHAUDHRY:

24       Q.  Did you at some point become aware of an order

25   entered against Mr. Katz in that case?

For The Record, Inc.
(301) 870-8025 - www.ftrinc.net - (800) 921-5555

FTC App'x 0079

238

Levison

FTC v. On Point Global, et al.                                    3/12/2021

  1        MR. DONAHO:  Object to form.  Outside the scope
  2   of discovery.
  3        THE WITNESS:  That's what I was referring to
  4   settled, yes, the order.
  5        MS. CHAUDHRY:  Sarah, can you pull up FTC
  6   Document 054.
  7        (Levison Deposition Exhibit Number 27 was
  8   marked for identification.)
  9        BY MS. CHAUDHRY:
 10   Q.  And this document is going to be marked as
 11   Exhibit 27.  This is the Stipulated Final Judgment and
 12   Order For Permanent Injunction and Other Equitable
 13   Relief as to Defendants Burton Katz and Jonathan Smyth,
 14   FTC versus Acquinity Interactive.
 15   A.  I can't see the document for some reason.
 16   Q.  We can switch that for you.
 17   A.  Where would you like me to go?
 18   Q.  I just wanted to make sure we were looking at
 19   the same document.  This is the Stipulated Final
 20   Judgment and Order For Permanent Injunction, correct?
 21   A.  Yes.
 22   Q.  And you can take a moment to flip through if
 23   you would like.  My question is simply whether you have
 24   seen this order before.
 25        MR. DONAHO:  Object to form.  Outside the scope

For The Record, Inc.
(301) 870-8025 - www.ftrinc.net - (800) 921-5555

239

Levison

FTC v. On Point Global, et al.                                    3/12/2021

1    of discovery.

2              THE WITNESS:  Yes, I have seen this order.

3              BY MS. CHAUDHRY:

4         Q.  Do you recall when you saw it?

5              MR. DONAHO:  Object to form.  Outside the scope

6    of discovery.  Asked and answered.

7              THE WITNESS:  I don't exactly recall, but it

8    was when it got resolved or when it got entered into,

9    whatever you say.

10             BY MS. CHAUDHRY:

11        Q.  And did you discuss this order with any of the

12   other co-defendants in this case?

13             MR. DONAHO:  I'm going to instruct Mr. Levison

14   not to answer that question.  It's outside the scope --

15   pretty far outside the scope of discovery in this

16   matter.

17             MS. CHAUDHRY:  I would like to state that the

18   judge in this -- Magistrate Judge Torres specifically

19   said that we are allowed to ask questions about the

20   Acquinity order in depositions.  So I also don't

21   believe that you can instruct based on relevance during

22   a deposition.

23             MR. DONAHO:  Well, Magistrate Judge Torres said

24   that the Acquinity order can be discussed and allowed

25   questioning on the order, including whether he's seen

**FTC App'x 0081**

# TAB AQ-DE.178-67

# FISHING LICENSE SCRIPT

## Greeting

- Thank you for calling (*website.org*). My name is _____. How may I help you today?

## Empathy

*Paraphrase to empathize (repeat the customers situation and reassure your assistance)*

- I understand your concern in regards to (*repeat clients issue*) and I'm here to assist, so no worries
- I understand how you feel about (*repeat clients issue*), however I can surely assist, so no worries
- I understand you feel confused regarding (*repeat clients issue*), no worries, I'm here to assist you with the situation
- I understand you're feeling concerned about (*repeat clients issue*) , but I'm here to help, so no worries
- I understand your frustration of (*repeat clients issue*), but don't worry, I'm here to help with that concern

## Accessing a Customer's Account

- In order for me to locate your info on our system, can you please provide me with the last four digits of your credit/debit card and your first and last name please?

## Explain Charges/Product

- (*First name*)I see that you were on our website (mention site), looking to get info on how to buy a fishing license and you were charged a processing fee of $3.99 plus $19.99, for the product offered through our site the "How To Become a Licensed Fisherman eBook", which is designed to better prepare you for fishing related activities by providing the rules and regulations for fishing in your state and other useful information

## Filter

*To be used when the client has asked for money back or has strongly insinuated that. And when you feel that by using the filter you can lower the customers concern and shift the focus on the benefits/rewards.*

- I understand your concern and we offer money back guarantee, but before we get there I'd like to inform you of the benefits that come with our service so you're fully aware of what we offer *(This is not a question, so briefly pause to see how the customer reacts and then continue with the retention, unless the customer explicitly says: NO!)*

## Benefits/Rewards Retention

- Bear in mind that this purchase is not a subscription nor a membership, there's no monthly or yearly fees; this is a onetime fee that was divided in two transactions of $3.99 and $19.99
- Also, the benefits and reward that we offer come from our affiliates
- So let me explain, along with the eBook we sent you 2 benefits: a cookbook with tips and recipes, $500 worth of saving coupons and a $100 shopping reward. So if you put this into perspective the value of the benefits is much higher than the value of the transaction amount, which in my opinion is a very good deal. So what do you think, should I send the rewards to the email we have on file or do you want to receive it somewhere else?

**FTC App'x 0083**

# FISHING LICENSE SCRIPT

*If the customer is not convinced with the benefits and reward, and if he/she seems open to another retention attempt, then offer the following:*

- How about if I throw in an additional reward for the purchase, I can offer $2000 grocery reward which you can use on the website or at one of the participating, all of this will be further explained on the email I'll send you

## Third Party Disclaimer

*To be used when a customer is under the impression that we processed or will process their FWCC service or when necessary to further explain what our company offers as a product*

- Bear in mind that we have not started nor, can we complete the FWCC procedure for you, because we're not the FWCC we're a third-party agency and our product is an optional tool which will help you navigate the FWCC and its procedures as we stated on the prominent disclosures on our site.

## Processing Fee Retention

- I'd like to inform you that the $3.99 is a non-refundable, non-recurring processing fee. We can definitely cancel/refund the $19.99, and I'm proceeding with that immediately, however, whenever a transaction is processed on our site we incur in a charge from our payment provider, so that fee is passed on to you for the processing of the transaction

## Closing without retention

- All you have to do is go to your email address and download the eBook to better prepare yourself. Also remember to take advantage of the benefits enclosed on the eBook. Is there anything else that I can assist you with today? Thank you and have a good day!

## Closing with Benefits/Rewards Retention

- OK great! I'll send you an email with the extra reward. Just follow the instructions on there to claim the $100 for shopping certificate and the $100 for shopping; it's very simple and self-explanatory to do so. Let me confirm your email address please, it is _____, right? Is there anything else that I can assist you with today? Thank you and have a great day!

**FTC App'x 0084**

# LICENSES SCRIPT

## Greeting

**If campaign name is Bella Vista Media Limitada:**
- Thank you for calling Customer Support Center. My name is _____. How may I help you today?

**All other campaigns:**
- Thank you for calling (*website.org*). My name is _____. How may I help you today?

## Empathy
*Paraphrase to empathize: repeat the customer's situation and reassure your assistance.*
- I understand your concern in regards to (*repeat clients issue*) and I'm here to assist, so no worries
- I understand how you feel about (*repeat clients issue*), however I can surely assist, so no worries
- I understand you feel confused regarding (*repeat clients issue*), no worries, I'm here to assist you with the situation
- I understand you're feeling concerned about (*repeat clients issue*) , but I'm here to help, so no worries
- I understand your frustration of (*repeat clients issue*), but don't worry, I'm here to help with that concern

## Accessing Customer's Account
- In order to locate your info on our system, can you please provide me with the last four digits of your credit/debit card and your first and last name please?

## Explain Charges/Product
- (*First name*) I see that you were on our website (*mention site*), looking to (*mention product*). You were charged a processing fee of $2.99/3.99 plus $19.99/$19.95, which are not recurring fees, for the Road Advisors Guide/Easy Guide /access to our Easy Books inventory which is designed to guide you through online DMV procedures if your eligible to do so in your state or to better prepare you when going down to the DMV in person.

## eBook retention
- *Download the specific eBook for the state the customer is from*
- *If necessary, you can ask Back Office to email the specific eBook to the client*
- *If the customer wants to receive assistance without downloading the eBook, proceed to providing instructions*
- *Inform the customer of the page where the specific information for his/her procedure is found. Once on that page briefly explain the steps to follow*
- *If you are helping the customer understand the online procedure, remember that the farthest we can go on the walk through is to reach the official DMV.gov website, so once you reach that part please let the customer know that from there on out he/she must complete the rest of the process alone*

- I have the eBook in front of me, so let me help you understand how you can process your (mention service). Please download the eBook that we sent you so that I can help you understand the process or I can re-send it to you  if you'd like

**FTC App'x 0085**

# LICENSES SCRIPT

## Filter

*To be used when the client has asked for money back or has strongly insinuated that. And when you feel that by using the filter you can lower the customers concern and shift the focus on the benefits/rewards.*

- I understand your concern and we offer money back guarantee, but before we get there I'd like to inform you of the benefits that come with our service so you're fully aware of what we offer *(This is not a question, so briefly pause to see how the customer reacts and then continue with the retention, unless the customer explicitly says: NO!)*

## Benefits/Rewards Retention

- Bear in mind that this purchase is not a subscription nor a membership, there's no monthly or yearly fees; this is a onetime fee that was divided in two transactions of $2.99/$3.99 and $19.99/19.95
- Also, the benefits and reward that we offer come from our affiliates
- So let me explain, along with the eBook we sent you 2 benefits, a $25 gas rebate and 60 days of road side assistance, and as a special offer for today I can throw in 1 of 3 rewards: it's either $100 for shopping, $50 for grocery shopping or $25 for dining. Putting this into perspective, the value of the benefits and rewards is much higher than the value of the transaction amount, which in my opinion is a very good deal. So what do you think, should I send the rewards to the email we have on file or do you want to receive it somewhere else?

## Processing Fee Retention

- I'd like to inform you that the $2.99/3.99 is a non-refundable, non-recurring processing fee. We can definitely cancel/refund the $46.95, and I'm proceeding with that immediately, however, whenever a transaction is processed on our site we incur in a charge from our payment provider, so that fee is passed on to you for the processing of the transaction

## Closing without Retention

- All you have to do is go to your email address, download the eBook and follow the instructions on how to proceed with your (mention service). Also remember to take advantage of the $25 gas rebate and 60 days of roadside assistance enclosed on the eBook. Is there anything else that I can assist you with today? Thank you and have a good day!

## Closing with eBook Retention

- OK, I'm glad we were able to assist you in better understanding how to proceed with your (mention service). Also remember to take advantage of the $25 gas rebate and 60 days of roadside assistance enclosed on the eBook. Is there anything else that I can assist you with today? Thank you and have a good day!

## Closing with Benefits/Rewards Retention

- OK great! I'll send you an email with the extra reward. Just follow the instructions to claim it; it's very simple and self-explanatory to do so. Let me confirm your email address please, we have here _____, is that right? Is there anything else that I can assist you with today? Thank you and have a great day!

**FTC App'x 0086**

**Greeting**

- Thank you for calling (*website.org*). My name is _____. How may I help you today?

**Empathy**

*Paraphrase to empathize: carefully listen to the customer and understand the main idea of the issue.*

*Identify, understand and communicate the customers' feelings (confused, frustrated or stressed).*

*Provide reassurance of assistance.*

- OK, so from what you mentioned, I understand that (repeat clients issue), I also sense that you're feeling a bit (mention feelings), but no worries, I'm here to help and I will definitely take care of the situation for you

**Accessing a Customer's Account**

- To locate your info on our system, can you please provide me with the last four digits of your credit/debit card and your first and last name,

  please?

**Explain Charges/Product**

- (*First name*)I see that you were on our website (mention site), looking to get info on how to buy a fishing license and you were charged a processing fee of $3.99 plus $19.99, for the product offered through our site the "How To Become a Licensed Fisherman eBook", which is designed to better prepare you for fishing related activities by providing the rules and regulations for fishing in your state and useful

  information of where to purchase licenses and the respective fees.

**Filter**

*To be used when the client has asked for money back or has strongly insinuated that. And when you feel that by using the filter you can lower the customers' concern and shift the focus to the benefits/rewards.*

- I understand your concern and we offer a money-back guarantee, so no worries, but before we get there I'd like to inform you of the following:

**FTC App'x 0087**

**Benefits/Rewards Retention**

- The purchase of the eBook is not a subscription nor a membership, so there are no recurring transactions; this is a onetime fee that totals $24.98

- Now, as free benefits from our affiliates, the eBook comes along with:

1. A cookbook with tips and recipes.

2. $500 worth of saving coupons.

3. Plus I can send you a free $100 shopping reward which can be used on a website similar to Amazon to purchase leading brands like Nike, Michael Kors, Ray-Ban, Sony, and much more… Or it can be used in person at stores like Office Depot, Payless, Sears, JCPenney, Aeropostale, The Vitamin Shoppe, Barnes & Noble, and other leading stores

- So, if you think about it, the value of the reward from our affiliates is much higher than the value of the purchase amount, which I think is a very good deal. With that said, should I use the email we have on file to send you the free $100 shopping reward, what we have is *(repeat email)*, is that correct?

*If the customer is not convinced of the benefits and reward, and if he/she seems open to another retention attempt, then offer the following:*

- How about if I throw in an additional reward for the purchase, I can offer $2000 grocery reward which you can use on the website or at one of the participating stores, all of this will be further explained on the email I'll send

  you.

**Third Party Disclaimer**

*To be used when a customer is under the impression that we processed or will process their FWCC service or when necessary to further explain what our company offers as a product*

- Bear in mind that we have not started nor, can we complete the FWCC procedure for you, because we're not the FWCC we're a third-party agency and our product is an optional tool which will help you navigate the FWCC and its procedures as we stated on the prominent disclosures on our site.

**Closing without retention**

- All you have to do is go to your email address and download the eBook to better prepare yourself. Also, remember to take advantage of the benefits enclosed in the

**FTC App'x 0088**

eBook. Is there anything else that I can assist you with today? Thank you and have a good day!

**Closing with Benefits/Rewards Retention**

- OK great! I'll send you an email with the extra reward. Just follow the instructions on there to claim the $100 shopping reward; it's very simple and self-explanatory to do so. Let me confirm your email address please, it is _____, right? Is there anything else that I can assist you with today? Thank you and have a great day!

**FTC App'x 0089**

**Greeting**

**If the campaign name is Bella Vista Media Limitada:**

- Thank you for calling Customer Support Center. My name is _____. How may I help you today?

**Refund Line Licenses:**

- Thank you for calling our billing department, my name is_____ how may I assist today?

**All other campaigns:**

- Thank you for calling *(website.org)*. My name is _____. How may I help you today?

**Empathy**

*Paraphrase to empathize: carefully listen to the customer and understand the main idea of the issue.*

*Identify, understand and communicate the customers' feelings (confused, frustrated or stressed).*

*Provide reassurance of assistance.*

- OK, so from what you mentioned, I understand that *(repeat clients issue)*, I also sense that you're feeling a bit *(mention feelings)*, but no worries, I'm here to help and I'll take care of the situation for you.

**Accessing Customer's Account**

- To locate your info on our system, can you please provide me with the last four digits of your credit/debit card and your first and last name,

  please?

**Explain Charges / Product**

- (*First name*) I see that you were on our website (*mention site*) which is a third-party agency and you were charged a processing fee of $2.99/3.99 plus $19.99/$19.95 for our assistance and eBook which is designed to help you complete the (mention service) with the DMV.

**FTC App'x 0090**

*on't pause and continue with e ook retention.*

**eBook retention**

*ownload the specific e ook for the state the customer is from.*

*If necessary, you can re send the e ook to the client from Wadiya.*

*If necessary, you can also ask ack ffice to email the same e ook or a different one from another website as a P F attachment.*

*If the customer wants to receive assistance without downloading the e ook, proceed to provide instructions.*

*If you are helping the customer understand the online procedure, remember that the furthest we can go on the walkthrough is to reach the official .gov website, so once you reach that point please let the customer know that from there on out they must complete the rest of the process alone.*

- To process the (mention service) online there are usually re uirements that you must meet, so I've opened the eBook to help you verify this, please download it from your email and open page *(mention page)* where you'll find the info I'm looking at. After we verify if you're eligible the eBook will also help us understand the steps to follow or the other options available to proceed.

*on't pause and inform the customer of the re uirements, links, and steps to follow, which will compromise them to keep the e ook.*

**Filter**

*To be used when the client has asked for money back or has strongly insinuated that. And when you feel that by using the filter you can lower the customers' concern and shift the focus to the benefits/rewards.*

- I understand your concern and we offer a money-back guarantee, so no worries, but before we get there I'd like to inform you of the following:

**Benefits/Reward Retention**

*Please be persistent when using this retention method, do not give up on the first that you get from the customer*

- The purchase of the eBook is not a subscription nor a membership, so there are no recurring transactions; this is a onetime fee that totals $23.98/22.98

**FTC App'x 0091**

- Now, as free benefits from our affiliates, the eBook comes along with:

1. $25 gas rebate with participating and leading gas stations.

2.  0 days of roadside assistance from Nation Safe Drivers (can be incremented to 90 days).

3. 20   off at AdvanceAutoParts.com, to purchase anything they sell, e.g. brake pads, car batteries, windshield wipers, etc. And, you can re-use the code as many times as you want.

4. Plus, I can send you a free $100 shopping reward which can be used on a website similar to Amazon to purchase leading brands like Nike, Michael Kors, Ray-Ban, Sony, etc. Or it can be used in person at stores like Office Depot, Sears, JC Penney, Aeropostale, Barnes & Noble, and other leading stores.

- So, if you think about it, the value of the benefits from our affiliates is much higher than the value of the purchase amount, which I think is a very good deal. With that said, should I use the email we have on file to send you the free $100 shopping reward, what we have is *(repeat email)*, is that correct?

*If after a couple of retention attempts, the customer is still giving a negative reply, please use the following as a final attempt:*

- Are you sure that you don't want to take advantage of the free $100 shopping reward?

- The free $100 shopping reward values 4   more than the amount you paid for, are you sure that you don't want to take advantage of it?

**Third Party Disclaimer**

*To be used when a customer is under the impression that we processed or will process their          service or when necessary to further explain what our company offers as a product*

- Bear in mind that we have not started nor, can we complete the DMV procedure for you, because we're not the DMV we're a third-party agency and our product is an optional tool which will help you navigate the DMV and its

  procedures.

**Rebuttals**

*Are you the*

- No, we're not the DMV, we're a third-party agency, however, the eBook you purchased is designed to guide you through online DMV procedures if your eligible

**FTC App'x 0092**

to do so in your state or to better prepare you when going down to the DMV in person, also remember that you can take advantage of *(offer benefits and reward)*

*ave you started the process of my (service)   When will I get my license/tags/registration*

- No, we have not started the process of the *(mention service)* nor can we complete it for you because we're not the DMV, however, with our guide you have the information at hand which will assist you in getting the procedure done, all you have to do is follow the instructions enclosed to proceed, also remember that you can take advantage of *(offer benefits and reward)*

*id I pay for my (service)*

- No, the payment you processed was not for the (mention service), you purchased our guide which will instruct you on how to proceed with the re uest of your (mention service), simply follow the instructions on the eBook, and remember that you can take advantage of *(offer benefits and reward)*

*o I have to buy this e  ook to (service)*

- No, it's an optional tool, but it will help you to identify the online re uirements, and if eligible, it will guide you step by step through the process. Now if you're not eligible, it will better prepare you by providing you with the DMV forms re uired to be filled out and by informing you what paperwork to present when going down to the DMV, also remember that you can take advantage of *(offer benefits and reward)*

*What did I pay for*

-  ou purchased our eBook, which is designed to show you how to proceed with the (mention service). Within the eBook you'll find the online re uirements and step by step instructions for DMV procedures, also remember that you can take advantage of *(offer benefits and reward)*

*I already processed the (service), I don't need your e  ook*

- OK, I understand that you've already processed the *(mention service)*, but bear in mind that the guide contains information regarding various DMV procedures, so it might help you in the future, plus you can forward it to your friends and family, so they can use it too, also remember that you can take advantage of *(offer benefits and reward)*

*I know how to do my (service), I don't need your e  ook*

- OK, I understand that you're aware of how to process the (mention service), but bear in mind that the guide contains information regarding various DMV procedures, so it might help you in the future, plus you can forward it to your friends and family, so they can use it too, also remember that you can take advantage of *(offer benefits*

**FTC App'x 0093**

*and*

reward.)

**Closing without Retention**

- All you must do now is go to your email address, download the eBook and follow the instructions on how to proceed with your *(mention service)*. Also, remember to take advantage of the $25 gas rebate and   0 days of roadside assistance enclosed on the eBook. Is there anything else that I can assist you with today? Thank you and have a good day!

**Closing with eBook Retention**

- I'm glad we were able to assist you in better understanding how to proceed with your *(mention service)*. Also, remember to take advantage of the $25 gas rebate and   0 days of roadside assistance enclosed on the eBook. Is there anything else that I can assist you with today? Thank you and have a good day!

**Closing with Benefits/Rewards Retention**

- OK great! I'll send you the email with the free reward.   ou'll get a code and link from us,  ust follow the instructions on there to claim it; it's very simple and self-explanatory to do so. Let me confirm your email address once again please, what we have is _____, is that correct? Is there anything else that I can assist you with today? Thank you and have a great day!

**Customer calls before processing eBook purchase**

- OK, let me explain: we're a third party agency that offers an eBook which is designed to show our customers how to navigate the DMV, in other words, our guide will provide you with the step by step process of all DMV procedures, whether it be online if your eligible to do so in your state or it'll better prepare you when going down to the DMV office in person

- So, what I suggest is to go ahead and process the purchase, you'll receive the download link to the eBook on your email, download it and then follow the instructions on the guide and you'll be on your way to completing your *(mention service)*

**FTC App'x 0094**

# Customer Care Reports
## GUIDES

### 1st September to 30th September

Agent Summary

PX74: Attachment A
Page 15

FTC App'x 0096

Inbound Calls Daily Summary

PX74: Attachment A
Page 16

FTC App'x 0097

# Email Breakdown

FTC App'x 0098

PX74: Attachment A
Page 25

# Customer Care Reports

## GUIDES

### 3rd November to 2nd December

PX74: Attachment A
Page 26

Agent Summary

FTC App'x 0100

PX74: Attachment A
Page 27

Inbound Calls Daily Summary

FTC App'x 0101

PX74: Attachment A
Page 28

Time to Abandon

FTCA App'x 0102

**Average Time to Abandon =   00:17 Minutes**

**KPI =   03:00 Minutes**

KPI          Average Time to Abandon          Inbound Calls

PX74:  Attachment A
Page 36

# Email Breakdown

FTC App'x 0103

PX74: Attachment A
Page 37

# Customer Care Reports GUIDES

6th October to 4th November

PX74: Attachment A
Page 38

# Agent Summary



PX74: Attachment A
Page 39

FTC App'x 0105

Inbound Calls Daily Summary

FTC App'x 0106

PX74:  Attachment A
Page 40

# Email Breakdown



PX74: Attachment A
Page 61

FTC App'x 0107

((((( Website Name)))) Customer Support Team

# Our Service

Hello (((((Customer First Name)))))),

Thank you for contacting the (((Website Name)))) Customer Support Center.

Road Advisors Guide provides our customers with state and service-specific guides designed to save you time by better preparing you for DMV related activities. Our team of experts has spent 1000's of hours researching DMV services in order to provide simple and easy to follow instructions for DMV related services. Where possible we provide you with pre-filled DMV forms, offer links, and instructions for services that can be performed online or at your nearest DMV office. Included in our service is 30 days of roadside assistance.

Please note, we are not affiliated with the DMV and cannot process changes to your driver license or registration. We provide a service that is designed to save you time by better preparing you for all your DMV related activities. Please be aware that this is neither a subscription nor a membership, this is a one-time payment.

If you have any further questions or concerns please feel free to reply to this email or call us on 855-482-9908 and we will be happy to assist you.

**FTC App'x 0108**

Sincerely,


(((Agent Name)))

((((( Website Name)))) Customer Support Team


# Clarification of the Service


Hello (((FIRST NAME))),


Thank you for contacting the (((Website Name)))) Customer Support Center.


Unfortunately, we are unable to help you with your request. At the present time we do not provide the requested services. The product you purchased with us is the Road Advisor Guide™ that is designed to save you time by better preparing you for all your DMV related activities. Please be aware that this is neither a subscription nor a membership, this is a one-time payment.


Sincerely,


(((Agent Name)))
((((( Website Name)))) Customer Support Team


**FTC App'x 0109**

Sincerely,


(((Agent Name)))

fishinglicense.org Customer Support Team


# Fishing Our Service


Hello (((((Customer First Name)))))),


Thank you for contacting the fishinglicense.org Customer Support Center.


The How to Become a Licensed Fisherman eBook, is designed to save you time by better preparing you for fishing activities. Our team of experts has spent hundreds of hours researching fishing related services in order to provide east to follow instructions for all your recreational licensing needs. The Guide provides a detailed checklist of all of the documents and steps needed to obtain a fishing license. If your state allows online services it will provide links to the specific website. It also includes additional information such as fishing tips, trip checklists and delicious recipes for your fresh catch. Note, we are not affiliated with your state's wildlife agency, and cannot process changes to your license; we provide a service that is designed to save you time by better preparing you for all fishing activities. Please be aware that this is neither a subscription nor a membership, this is a one-time payment.

If you have any further questions or concerns please feel free to reply to this email or call us on (888)-867-4816 and we will be happy to assist you.


**FTC App'x 0110**

Sincerely,


(((Agent Name)))

fishinglicense.org Customer Support Team


## Fishing Clarification of the Service


Hello (((FIRST NAME))),


Thank you for contacting the fishinglicense.org Customer Support Center.

Unfortunately, we are unable to help you with your request. At the present time we do not provide the requested services. The product you purchased with us is the How to Become a Licensed Fisherman eBook that is designed to save you time by better preparing you for all your fishing related activities. Please be aware that this is neither a subscription nor a membership, this is a one-time payment.




Sincerely,


(((Agent Name)))
fishinglicense.org Customer Support Team


**FTC App'x 0111**

## Our Service

Thank you for contacting us.

Our Service.

The product offered through our site is the Driver's License Easy Guide™, a state and service-specific guide designed to save you time by better preparing you for DMV related activities. Our team of experts has spent 1000's of hours researching DMV services in order to provide simple to follow instructions for DMV related services. Where possible we provide and pre-fill your specific DMV forms and offer links and instructions for services that can be performed online or require a visit to the DMV. Also included as part of our service is 30 days of roadside assistance. We are not affiliated with the DMV and cannot process changes to your driver license or registration, we provide a service that is designed to save you time by better preparing you for all your DMV activities.


Please be aware that this is a one-time charge and not a subscription. If you have any questions about our product, please take a moment to reply to this email or call us on (866)5296007 and we will be happy to assist you.

Otherwise, we wish you a very nice day!


Sincerely,

Customer Support Team.

OR


Thank you for contacting us.

Our Service.

The product offered through our site is the Fishing License Easy Guide™, a state and service-specific guide designed to save you time by better preparing you for the Fish and Wildlife Conservation Commission related activities. Our team of experts has spent 1000's of hours researching FWCC services in order to provide simple to follow instructions for FWCC related services. Where possible we provide and pre-fill your specific FWCC forms and offer links and instructions for services that can be performed online or require a visit to the FWCC. We are not affiliated with the FWCC and cannot process a fishing license, we provide a service that is designed to save you time by better preparing you for all your FWCC activities.

Your satisfaction is our goal. Please take a moment to reply if you have any further questions or feedback. Otherwise, have a great day!

Sincerely,

Customer Support Team.


**FTC App'x 0112**

## Our Service

Hello (((((Customer First Name)))))),

Thank you for contacting the (((Website Name)))) Customer Support Center.

The product offered through our site is the Road Advisors Guide, a state and service-specific guide designed to save you time by better preparing you for DMV related activities. Our team of experts has spent 1000's of hours researching DMV services in order to provide simple to follow instructions for DMV related services. Where possible we provide and pre-fill your specific DMV forms and offer links and instructions for services that can be performed online or require a visit to the DMV. Also included as part of our service is 30 days of roadside assistance. We are not affiliated with the DMV and cannot process changes to your driver license or registration, we provide a service that is designed to save you time by better preparing you for all your DMV activities.Please be aware that this is not a subscription nor a membership, this is a one time payment.

Customer satisfaction is our goal. Please take a moment to reply to this email if you have any further questions or feedback. Otherwise, have a great day!

Sincerely,

(((Agent Name)))

((((( Website Name)))) Customer Support Team

OR

Thank you for contacting us.

Our Service.

The product offered through our site is the Fishing License Easy Guide™, a state and service-specific guide designed to save you time by better preparing you for the Fish and Wildlife Conservation Commission related activities. Our team of experts has spent 1000's of hours researching FWCC services in order to provide simple to follow instructions for FWCC related services. Where possible we provide and pre-fill your specific FWCC forms and offer links and instructions for services that can be performed online or require a visit to the FWCC. We are not affiliated with the FWCC and cannot process a fishing

**FTC App'x 0113**

license, we provide a service that is designed to save you time by better preparing you for all your FWCC activities.

Your satisfaction is our goal. Please take a moment to reply if you have any further questions or feedback. Otherwise, have a great day!

Sincerely,

Customer Support Team.

**FTC App'x 0114**

# TAB AQ-DE.200-24

Page: 121 of 126     Date Filed: 10/30/2023     Document: 26-1     USCA11 Case: 23-11197

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 14-60166-civ-SCOLA/OTAZO-REYES



ALL DEFS' RES TO PL'S STMT OF UNDPUTED
MAT FACTS IN SUPP OF ITS MSJ CNTMPT
RLNGS & CROSS MOT TO RECON AND
VACATE SHOW-CAUSE ORDR AS TO DEF E
ROTHMAN (filed 9/10/2021)

**DX 23**

19-CV-25046; FTC v OnPoint

---

FEDERAL TRADE COMMISSION,

     Plaintiff,

     v.

ACQUINITY INTERACTIVE, LLC, *et al.*,

     Defendants.

---

## <u>DECLARATION OF MELANIE E. DAMIAN</u>

I, Melanie E. Damian, based on my review of the books and records of On Point Global LLC, as the Court-appointed Receiver and Corporate Representative, have personal knowledge of the facts and matters discussed in this Declaration:

1.    I am over the age of twenty-one (21) and am competent to give this testimony.

2.    On December 13, 2019, I was appointed Receiver for On Point Global LLC ("OPG").

3.    Together with my counsel, I reviewed documents and billing records produced by the law firms Baker Hostetler, Crowell and Moring, and Klein Moynihan Turco relating to their work for OPG as well as numerous records of OPG, and the following testimony is based on the review of those documents and records.

4.    Commencing in 2017 and through 2019, OPG sought and obtained advice from the law firms mentioned in paragraph 3 above regarding all aspects of regulatory compliance with respect to each of the websites alleged by the FTC to be misleading.

**FTC App'x 0116**

USCA11 Case: 23-11197    Date Filed: 10/30/2023    Page: 122 of 126    Document: 26-1

5.      OPG incurred fees of nearly $300,000 in seeking and obtaining this legal advice. Based on my review of the documents and records of OPG, OPG followed the advice it received from each of the counsel.

*Baker Hostetler*

6.      At OPG's request, Baker Hostetler conducted what was in its own words a "large scale compliance review" for OPG.

7.      Part of Baker Hostetler's "large scale compliance review" for OPG included preparation of various memoranda throughout 2017 summarizing its analysis of compliance issues for OPG.  In these memoranda, Baker Hostetler provided opinions regarding a business model presented by OPG.  Baker Hostetler concluded that it did not uncover any legal challenges and low legal risk was presented by OPG's business model regarding both private legal actions and governmental enforcement actions.

8.      On September 27, 2017, in an effort to "ensure total compliance" with all applicable regulations, OPG requested that Baker Hostetler provide a "thorough legal and compliance review of each of the division's 16 web processes", including but not limited to analysis of website disclaimers, data collection and data sharing rules, privacy policies, site content, and landing pages used in monetization, as well as the content of the guides provided by the websites. OPG also sought and obtained from Baker Hostetler legal advice concerning email communications, including mail stream plans, sending domains and Whois registrations, from addresses, creatives including content, cross-stream marketing, and the unsubscribe process, and legal advice regarding text communications and browser push notifications.

9.      To complete this compliance review, Baker Hostetler compiled a legal team of individuals familiar with advertising and regulatory issues, as well as internet law considerations

**FTC App'x 0117**

such as data privacy, cybersecurity, and the CAN-SPAM Act, and that legal team performed the requested compliance review and provided legal advice regarding the foregoing matters.  And, based on my review of the documents and records of OPG, OPG followed the advice it received from counsel.

### *Crowell & Moring*

10.     My review of the documents and billing records produced by Crowell and Moring revealed that it also counseled OPG regarding a variety of compliance issues.

11.     In April 2019, Crowell and Moring developed an ongoing monitoring program to "ensure that [OPG] complies with applicable laws and regulations and thereby reduces the risk of governmental investigations, consumer claims and partner indemnity demands."  Notably, in preparation for developing this program, Crowell and Moring reviewed OPG websites and its affiliate marketing materials. Ultimately, Crowell and Moring proposed a schedule to review OPG's websites and marketing materials on an ongoing basis to flag any potential compliance issues.

12.     Crowell and Moring also provided legal compliance training to OPG in or about March 2019 regarding basic consumer protection principles, telemarketing law, lead generation issues, .com disclosures, CAN-SPAM, and privacy and data security.

13.     As part of its review, Crowell and Moring visited and navigated through the content of various OPG websites, including, but not limited to, wicassistance.com, section-8-housing.com, and food-stamps.org, in order to provide opinions regarding compliance and then provided its opinions regarding compliance to OPG. Based on my review of the documents and records of OPG, OPG followed the advice it received from counsel.

**FTC App'x 0118**

*Klein Moynihan Turco*

14.     Klein Moynihan Turco ("KMT") also counseled OPG regarding a variety of compliance issues, and KMT's scope of representation included advice, counsel, and representation in connection with internet marketing and telemarketing law.

15.     KMT provided opinions regarding OPG's website flows, including the Section 8 Housing website flows, wherein *inter alia* KMT counseled OPG regarding compliance with the California Consumer Protection Act (the "CCPA") in collecting user information.

16.     KMT also counseled OPG regarding OPG's compliance with the Telephone Consumer Protection Act (the "TCPA"), revising several OPG agreements to comply with same.

17.     Based on my review of the OPG's records, OPG requested legal advice from each of the three firms regarding whether OPG's websites were in compliance with applicable regulations and, if not, how to bring them into compliance; the three firms provided such advice to OPG; and OPG followed the advice.

18.     OPG used the law firms' advice to craft their website scripts and flow, and, most importantly, to provide disclaimers that OPG believed were sufficiently-worded and located so that the customers and website users would be on notice that they were not interacting with a government agency and, for those websites that offered information on how to obtain state licensing, that the fees charged would be for provision of information rather than the license itself.

19.     I did not find any documents or communications from any of the three firms to OPG which raised any existing or potential compliance issues with FTC regulations or the *Aquinity* Order and which provided advice that was not followed by OPG.

20.     My review of OPG's records also revealed evidence that chargebacks on OPG's websites were not high relative to the market and that there was a low volume of consumer

**FTC App'x 0119**

4

complaints relative to the number of transactions.  During the 2017 through 2019 period, OPG sold nearly 5.5 million guides to consumers.  Of the 953 complaints received by the FTC as of June 25, 2019, two-thirds of the complainants did not purchase OPG products, and, of the remaining complainants, all but five received full refunds.

I declare under penalty of perjury and pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge.

Executed on September 10, 2021

Melanie E. Damian

## CERTIFICATE OF SERVICE

I certify that on October 30, 2023, I served the foregoing Supplemental

Appendix on counsel of record using the Court's electronic case filing system.  All

counsel of record are registered ECF filers.

Dated: October 30, 2023          /s/ *Bradley Grossman*
                                        Bradley Grossman
                                        Attorney
                                        Office of the General Counsel
                                        Federal Trade Commission
                                        600 Pennsylvania Avenue NW
                                        Washington, DC 20580
                                        (202) 326-2994
                                        bgrossman@ftc.gov